**UNITED STATES of America, Plaintiff–Appellee,**

v.

**James M. KLOTZ, Defendant–Appellant.**

**No. 91–1149.**

United States Court of Appeals, Seventh Circuit.

Argued Aug. 7, 1991.

Decided Sept. 9, 1991.

Susan M. Knepel (argued), Office of the U.S. Atty., Milwaukee, Wis., for plaintiff-appellee.

James A. Walrath (argued), Shellow, Shellow & Glynn, Milwaukee, Wis. and Frederick L. Zievers, Madrigrano, Gagliardi, Zievers & Aiello, Kenosha, Wis., for defendant-appellant.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

After an undercover investigation during which an informant bought cocaine repeatedly from Frank Padovano, agents of Wisconsin's Department of Criminal Investigation arrested James Klotz, who Padovano identified as his source. Klotz told the agents that he had nothing to do with the drug trade, and to back up his claim he turned over his key ring and invited the agents to search his house and two lockers he rented at Barth's Storage. The agents searched units 38 and 63, finding no drugs, and a search of the Klotz home was no more rewarding.

Lieutenant Robert Reschke suspected that Klotz had not told the agents everything and returned to Barth's Storage to find out whether he had any other units. Perusing the records, Reschke came across a unit rented to Teresa Teigen, Klotz's wife. Barth's records showed that Teigen leased Unit No. 377 on July 18, 1989, before her marriage to Klotz, and that payments had been made regularly. (The records did not show who made the payments.) A payment in November 1989 extended the lease through February 18, 1990 (five days in the future), and another payment in January 1990 ensured possession to March 18, 1990. Reschke tried one of the keys that Klotz had handed over and found that it worked the lock of Unit 377. He did not look inside but returned to Klotz's home and asked Teigen for her permission to search Unit 377. Teigen expressed surprise that the lease was current, telling Reschke that the final payment had been made in December 1989. Teigen related that Klotz told her that he had sold the waterbed they stored in Unit 377, so that they had no need of it. Nonetheless, Teigen signed a consent form. Acting on her permission the agents opened Unit 377, which contained a kilogram of cocaine. Klotz pleaded guilty to

the drug charges brought against him under 21 U.S.C. § 841, reserving for appeal his objection to the validity of his wife's consent. Fed.R.Crim.P. 11(a)(2). The district court sentenced Klotz to 180 months' imprisonment; he appeals the sentence too.

█ Klotz's opening salvo—that his wife's consent is the fruit of an unlawful search of the lock of Unit 377 by insertion of the key—requires no more than citation to *United States v. Concepcion*, 942 F.2d 1170 (7th Cir.1991), also decided today. His argument that Teigen lacked authority to give permission requires little more discussion. Either actual or apparent authority will do. *Illinois v. Rodriguez*, —— U.S. ——, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *United States v. Chaidez*, 919 F.2d 1193, 1201–02 (7th Cir.1990). Teigen was the lessee, and her authority was not diminished by surprise that the lease had been extended in January 1990. The search occurred on February 13, 1990, five days before the expiration of the lease as extended in November 1989—when Teigen concededly had an interest in the locker. If the lessor had cleaned out the locker on March 1, 1990, before the expiration of the final extension, Teigen would have been the right person to obtain relief. She was therefore also the right person to give consent. At all events, authority is a factual issue, and our review is deferential. *United States v. Miller*, 800 F.2d 129, 133–34 (7th Cir.1986); *United States v. Sells*, 496 F.2d 912, 914 (7th Cir.1974). The magistrate judge found that Teigen had apparent authority—for the agents had seen the lease and knew that she was not only the lessee of record but also admitted leasing the unit and making payments through 1989. The district judge adopted this view, which is not clearly erroneous. Police are not obliged to believe convenient disclaimers inconsistent with documents in hand.

The most substantial issue concerns the interpretation of U.S.S.G. § 5K1.2 (policy statement), which says that "[a] defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." The district court ascertained Klotz's guideline range at 151–188 months' imprisonment. (Klotz's contention that the judge should not have believed Padovano when determining the amount of cocaine he sold as part of the same course of conduct is unavailing. Our review is deferential, and the judge was entitled to believe Padovano no matter how sleazy Padovano may be.) The judge said that he chose 180 months as Klotz's sentence:

> because I'm convinced that Diamond Jim [Klotz] was a big player, [that] Diamond Jim did effectively destroy lives of many people. Because I'm convinced that you could have done much more to help yourself, the government will ultimately walk up the ladder and find [your supplier] Neumiller and some of those other people. And that process is ongoing; but you haven't helped it at all. And because of the demands of the policy established by Congress ... I had to make the determination that I made today on the total scope of the drug conspiracy.

Klotz maintains that this passage shows that the judge enhanced his sentence because he did not cooperate in the investigation of Neumiller. That enhancement, Klotz submits, violates both § 5K1.2 and the self-incrimination clause of the fifth amendment.

What does it mean to consider failure to cooperate "as an aggravating sentencing factor"? The Sentencing Commission did not define the term "aggravating sentencing factor", which is unique to § 5K1.2, appearing nowhere else in the guidelines' text or commentary. An "aggravating sentencing factor" could be a reason to alter the base offense level or depart upward; it also could be a reason to select a higher spot in the sentencing range than the judge otherwise would choose. If the former, the prosecution prevails; if the latter, Klotz. Which meaning does the language have? Section 5K1.2 lacks a comment; the one it had when issued the Commission deleted as confusing. See Amendment No. 291, effective November 1, 1989. Even the original comment sheds no light on this question.

■ ·The structure of the guidelines implies that an "aggravating sentencing factor" is a reason to give a sentence above the guideline range. Section 5K1.2 belongs to a series of policy statements under the heading "PART K—DEPARTURES". Section 5K1.1 authorizes a court to depart downward, on motion of the prosecutor, when the defendant provides substantial assistance to authorities. Both its placement in Part K and its pairing with § 5K1.1 imply that 5K1.2 forbids upward departures in retaliation for failure to assist the authorities. Other sections in Part K also are concerned exclusively with departures. Part 5H, by contrast, identifies a series of characteristics that a court should or should not consider in departing or in choosing a sentence within the presumptive range. See, e.g., § 5H1.4: "Physical condition is not ordinarily relevant in determining whether a sentence should be outside the guidelines or where within the guidelines a sentence should fall."; § 5H1.10: "Race, Sex, National Origin, Creed, Religion, and Socio–Economic Status ... are not relevant in the determination of a sentence." Although the matter is not free from doubt, we conclude that § 5K1.2 does not forbid a judge to consider the extent of assistance when selecting a sentence within the guideline range. *United States v. Smitherman*, 889 F.2d 189, 191 (8th Cir. 1989), and *United States v. DePuew*, 889 F.2d 791, 794 (8th Cir.1989), on which Klotz relies, are not to the contrary. Each says only that because the sentencing judge disregarded the defendant's failure to assist authorities, it did not violate § 5K1.2. Neither discusses the scope of that provision.

■ What § 5K1.2 does not forbid, the Constitution nonetheless proscribes, Klotz maintains. In the course of assisting the authorities a person necessarily reveals inculpatory information. An additional sentence is compulsion to speak and so violates the privilege in the fifth amendment, the argument concludes. Yet we know from cases such as *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), that judges may reward assistance with lower sentences. *Roberts* implies a *sentencing differential* of the sort familiar in plea bargaining: one sentence if the defendant is mum (or insists on trial), a lower sentence if the defendant sings (or pleads guilty). Whether this differential is a reward for cooperation or a penalty for invoking a constitutional right depends on the benchmark—the "normal" sentence that would be meted out if constitutional rights were not salient (here, if Klotz had no information that he could provide or withhold). See *United States v. Turner*, 864 F.2d 1394, 1398–99 (7th Cir.1989); *United States v. Long*, 823 F.2d 1209, 1211–12 (7th Cir.1987).

■ Distinguishing between rewards and penalties was hard in the pre-guideline world, for sentencing was so individualistic that it was next to impossible to tell what would have happened had the constitutional right not been pertinent. Now that the guidelines are in place, however, there is a norm: the presumptive range. Accepting responsibility, assisting the authorities, and the like, lead to downward departures—unambiguous rewards, unless the tables have been jacked up to make room for these sentencing differentials. Klotz invites us to take the lower limit of a range (or perhaps the mid-point) as the benchmark and to find any higher sentence a penalty. The lower limit of his range is 151 months and the mid-point 169½ months. Klotz received a sentence of 180 months and insists that the excess is a penalty for the exercise of his right to remain silent.

Despite the attractions of Klotz's approach—it is nice to have rules that simultaneously protect the constitutional entitlement and are easy to state and implement—it slices things too finely to adopt a point within the guideline range, rather than the range itself, as the benchmark. The Sentencing Commission did not tell judges to prefer one part of the range over another, to give the lowest (or middle) sentence unless there is some extra factor. Thus the range itself is the apt starting point, and choices within the range cannot readily be assigned particular causes. Klotz's sentence shows why. The district judge's observation that Klotz has not as-

sisted the authorities can be read, as Klotz does, to signify a penalty for silence. Yet it also could mean that the judge found Klotz a callous person, unconcerned about the injuries he inflicted on others and the drug trade that wastes still more lives. When conscience does not induce compliance with legal and moral duties, courts must rely more heavily on penal sanctions, speaking to defendants in the language they understand. Expressions such as the district judge's then may or may not mark a penalty for *silence*, as opposed to a trait of character relevant to sentencing. It would fetter judges unduly to hold them to the lower or middle point of the range unless they could come up with an expression that was unambiguously neutral with respect to all constitutional rights. Klotz received a sentence eight months less than the upper bound of a properly determined range and so suffered no penalty by exercising his right to remain silent.

AFFIRMED.