**UNITED STATES of America,**
**Appellee,**

v.

**Stephen RIVERA, also known as Nesio, Alexander Murcia, James Arce, also known as Little, Alfredo Giraldo and Daniel Picardo, also known as Juan A. Pichardo, also known as Malala, Defendants,**

**Jerry Donnell Walden, also known as Armel and Jackie Leonza Walden, also known as Rashala, Defendants–Appellants.**

**Docket Nos. 98–1651(L), 98–1653.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 13, 1999.
Decided: Nov. 22, 1999.

David M. Dudley, Esq., Los Angeles, CA (Philip Kent Cohen, Esq., on the brief), for Defendant–Appellant Jerry Walden.

Richard B. Mazer, Esq., San Francisco, CA, for Defendant–Appellant Jackie Walden.

Kim A. Berger, Assistant United States Attorney (Mary Jo White, United States Attorney for the Southern District of New York, Christine Chi, Alexandra A.E. Shapiro, Assistant United States Attorneys, on the brief), New York, NY, for Appellee.

Before: WALKER, LEVAL, and POOLER, Circuit Judges.

JOHN M. WALKER, JR., Circuit Judge:

Jerry and Jackie Walden, two brothers, were convicted by a jury of violating 21 U.S.C. § 846 by conspiring to distribute and to possess with intent to distribute cocaine. The United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) sentenced Jerry Walden to 480 months in prison, and sentenced Jackie Walden to 348 months in prison. The district court also sentenced each defendant to five years of supervised release and imposed mandatory assessments.

At trial, the government proved that the Waldens had been involved in a major drug organization spearheaded by one Juan Soriano, and that the Waldens had distributed drugs through their apartment at 253–06 Craft Avenue in Rosedale, New York. Soriano testified, pursuant to a cooperation agreement, that he had sold large quantities of narcotics to the Waldens between 1994 and 1996. The government introduced tape recordings and transcripts of conversations obtained from a wiretap of Soriano's cellular telephone, and presented evidence seized at the Craft Avenue apartment, including cocaine, marijuana, three guns, and a cache of "cop-killer" bullets.

The Waldens appealed their convictions and their sentences. We have discussed most of their arguments in a separate order, filed concurrently with this opinion. The order rejects the Waldens' challenges to the wiretaps of Soriano's phone and the search of their apartment, and affirms sentence enhancements for Jackie Walden based on the quantity of cocaine and possession of a firearm. In this opinion, we examine only the Waldens' final argument on appeal. The Waldens contend that the district court violated their Fifth Amendment right against self-incrimination by sentencing them in part based on their lack of cooperation with the government following their convictions.

At the Waldens' sentencing, Judge Kaplan held that "a refusal to assist in the investigation of others is an appropriate factor in determining where within a guideline range a sentence may be imposed," and found that "even after conviction these defendants have not come forward and cooperated with the government." JA 156. Judge Kaplan then plainly stated that Jackie Walden's non-cooperation after his conviction had no impact on his sentence. JA 156–57. Accordingly, Jackie Walden may not chal-

lenge his sentence on that basis and we will not consider his claim further.

 With respect to Jerry Walden, however, Judge Kaplan stated: "I ... regard his failure to come forward and to assist the government in its investigations following his conviction in this case as affecting the point within the guideline range to which I am sentencing him. To be very specific about it, of the 480 months, I am attributing in my mind 60 months to his failure to assist the government postconviction." JA 159. Because Judge Kaplan stated on the record that five years of Jerry Walden's sentence were attributable to his failure to cooperate with the government, we proceed to consider Jerry Walden's argument that this violated his Fifth Amendment rights.[1]

 The Fifth Amendment provides a "safeguard against judicially coerced self-disclosure," *Mitchell v. United States*, 526 U.S. 314, 119 S.Ct. 1307, 1312, 143 L.Ed.2d 424 (1999) (quoting *Brown v. United States*, 356 U.S. 148, 156, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958)), and this safeguard extends to the sentencing phase of a criminal proceeding as well, *see id.* at 1315. Walden argues that the *Mitchell* case, which held that a district court may not draw adverse inferences from a defendant's silence at sentencing, *see id.*, prohibits a court from imposing a sentence based on a defendant's failure to cooperate.

In this case, however, the district court did not draw a factual inference from Walden's silence; instead, it considered that silence itself, manifested in the form of a refusal to cooperate, to be a factor relevant to its sentencing determination. The *Mitchell* Court expressly refused to decide

"[w]hether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in [the sentencing guidelines]." *Id.* at 1316. The extent to which a district court may consider a defendant's silence at sentencing therefore was not determined by *Mitchell.*

This is not the first time that we have examined the question of the impact on a defendant's sentence of his refusal to cooperate. In *United States v. Stratton*, 820 F.2d 562 (2d Cir.1987), the district court imposed a consecutive ten-year sentence on a defendant, instead of making it concurrent to his prior fifteen-year sentence, to "convince [him] that cooperation with the government is in [his] best interest." *Id.* at 563 (quoting the district court at sentencing). We stated then that although a sentencing court could consider the failure to cooperate, *see Roberts v. United States*, 445 U.S. 552, 557–58, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980), there was an important "distinction between increasing the severity of a sentence for a defendant's failure to cooperate and refusing to grant leniency." 820 F.2d at 564. Examining· the district court's remarks at sentencing, we held that the district court in that case had improperly enhanced the defendant's sentence. *See id.*

As the *Stratton* court realized, the distinction between withholding leniency and increasing a penalty is "difficult to apply." *Id.; cf. United States v. Jones*, 997 F.2d 1475, 1478 (D.C.Cir.1993) (in banc) ("The whole notion of showing leniency to some deserving defendants ... requires withholding leniency from others who appear less deserving."). Complicating matters further is the fact that *Stratton* arose before the advent of the United

---

1. The Waldens do not cite to U.S.S.G. § 5K1.2, which states that "[a] defendant's refusal to assist authorities in the investigation of other persons *may not be considered* as an aggravating sentencing factor." *Id.* (emphasis added). A strong argument can be made that this prohibition applies only to upward departures, and not to an increased sentence within the appropriate guideline range. *See United States v. Klotz*, 943 F.2d 707, 709–10 (7th Cir.1991) (Easterbrook, J.). However, the issue of whether Jerry Walden's sentence was imposed in violation of § 5K1.2 was not raised below and is not before us; we will thus confine our attention to the constitutional claim.

States Sentencing Guidelines, at a time when appellate review was generally limited to ascertaining whether a sentence was within the statutory maximum. Under the present sentencing regime, in which a judge selects a sentence from within a particular range guided principally by offense characteristics and criminal history, the reviewing court is required to determine whether the sentence is in accord with the guidelines, which provide a clear benchmark.

The Seventh Circuit has held that district courts are "free to consider a defendant's lack of cooperation in assigning a sentence within the Guidelines range." *United States v. Price*, 988 F.2d 712, 722 (7th Cir.1993) (relying on *United States v. Klotz*, 943 F.2d 707, 710 (7th Cir.1991)). In the *Klotz* case, Judge Easterbrook stated that it was difficult "in the pre-guideline world" to distinguish between a sentencing reward and a sentencing penalty, mostly for lack of a readily available yardstick. 943 F.2d at 710. "Now that the guidelines are in place, however, there is a norm: the presumptive range." *Id.* Judge Easterbrook refused to select either the midpoint or the bottom of the range as the proper benchmark for a sentence; as long as the sentence fell within the range, it was not properly conceptualized as a "penalty." *Id.* at 710–11.

In *Klotz*, the defendant faced a range of 151 to 188 months in prison, and received a prison term of 180 months. *See id.* at 710. In the *Jones* case, in which the D.C. Circuit similarly found that the defendant was not penalized for his non-cooperation, the defendant also faced a range of 151 to 188 months, and only received 127. *See* 997 F.2d at 1478. It is hard to quibble with the *Klotz* and *Jones* courts' conclusions that no penalties for non-cooperation were imposed by the sentencing courts. In this case, however, Jerry Walden faced a sentencing range at the top of the chart, from 360 months to life in prison. Within that range, he received 480 months, and the district court explained the reasons for the 120 months above the minimum: Judge Kaplan first noted the defendant's "willingness to go to war with law enforcement," and then explicitly attributed 60 months of his sentence to his failure to cooperate. In *Klotz*, the court stated that the judge's comments regarding a lack of cooperation could be interpreted to mean only that he found the defendant to be a "callous person, unconcerned about the injuries he inflicted on others." 943 F.2d at 711. No such interpretation is possible in the present case.

The district court quite explicitly imposed an additional five year sentence on Jerry Walden for his refusal to cooperate with the authorities following his conviction. This sentence is impossible to reconcile with our precedents in *Stratton*, as well as our earlier holdings in *DiGiovanni v. United States*, 596 F.2d 74, 75 (2d Cir. 1979) (remanding case for resentencing because defendant had been "punished for exercising his right to remain silent," and noting that silence in narcotics cases often stems from "well-founded fears of reprisal to the witness or his family"), and *United States v. Ramos*, 572 F.2d 360, 362 (2d Cir.1978) (remanding because defendant's "refusal to testify may have been an important factor in the sentence").

The convictions of both defendants are affirmed, for the reasons stated in our concurrent order. We also affirm Jackie Walden's sentence. As Jerry Walden's sentence was improperly enhanced for his failure to cooperate, we vacate the judgment in his case and remand to the district court for resentencing.