**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 22 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ATZMON GERBY,

     Defendant - Appellant.

No. 01-8077
(No. 01-CR-51-B)
(D. Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.

---

Atzmon Gerby appeals his conviction for possession with intent to distribute 3,4-Methylenedioxymethamphetamine ("MDMA" or "Ecstacy"). We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I

Gerby was stopped by Wyoming Highway Patrol State Trooper David Chatfield as Gerby was driving westbound on Interstate 80. Chatfield observed Gerby speeding approximately five miles per hour over the posted speed limit and proceeded to pull him over. Chatfield requested Gerby's driver's license and registration, and Gerby provided his California driver's license and a rental agreement for the car. Chatfield also inquired of Gerby's travel plans, and Gerby explained that he was traveling from New York to Las Vegas, where he was to meet his wife.

After running a check on the driver's license and a criminal history check for "Atzmon Gerby"—which turned up one prior arrest in Las Vegas—Chatfield returned the license and rental agreement to Gerby, issued him a warning for speeding, and told him he was free to leave and to have a safe trip. As Chatfield moved away from the car, Gerby asked Chatfield how he could pay for the ticket. After informing Gerby that he did not have to pay anything because he only received a warning, Chatfield asked Gerby if he had any guns or illegal drugs in the vehicle, to which Gerby responded that he did not. Chatfield then asked Gerby if he "could look in his vehicle." (Appellant's App. at 44.) Gerby gave an ambiguous answer, and Chatfield obtained a clarification from Gerby that he consented to a search. (Id. at 44–45.) Specifically, Gerby consented to

Chatfield's request for Chatfield to "look in the trunk." (Id. at 45.) Gerby handed Chatfield the keys to the trunk, walked with Chatfield to the rear of the car, and observed Chatfield as he opened the trunk and began searching the three duffel bags located inside the trunk. As Chatfield opened and searched the duffel bags he asked Gerby whether he had ever been arrested, specifically in Las Vegas. When Chatfield opened up one of the larger duffel bags, he discovered "literally thousands of white pills wrapped in . . . clear plastic bags." (Id. at 48.) At no point during Chatfield's opening of the bags did Gerby object to Chatfield's search.

Gerby was subsequently arrested and indicted for possession with intent to distribute approximately 147 pounds of MDMA in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). He moved to suppress the MDMA seized from the trunk of the rental car, but after an evidentiary hearing the district court denied his motion. Following a jury trial, Gerby was convicted and sentenced to 151 months' imprisonment. He timely appeals.

## II

Gerby first challenges the district court's denial of his motion to suppress the MDMA discovered in the trunk of the automobile he was driving. He specifically argues that Chatfield: (1) illegally extended the traffic stop in an effort to obtain consent to search the automobile, (2) exceeded the scope of

Gerby's consent to "look into the trunk" when he searched the duffel bags, and (3) distracted Gerby from objecting to the search of the duffel bags by asking him a series of accusatory questions about his past arrest record.

In an appeal of a denial of a motion to suppress, we review the district court's factual findings for clear error and in the light most favorable to those findings. United States v. Bustillos-Munoz, 235 F.3d 505, 511 (10th Cir. 2000). We review de novo the ultimate determination of the reasonableness of the search under the Fourth Amendment. Id. The burden of proof in showing that a defendant's consent to a search was voluntary is on the government, and it must show that "consent was given without duress or coercion, express, or implied." United States v. Dewitt, 946 F.2d 1497, 1500 (10th Cir. 1991) (quotation omitted). The district court's review of the voluntariness issue must take into account "the totality of the circumstances, and should not presume a defendant's consent to a search is either involuntary . . . or voluntary." Id. (quotation omitted).

## A

Gerby argues that the officer illegally detained him after returning his license and rental agreement and that therefore Gerby's consent to the search of his vehicle was coerced. Specifically, he claims that the officer never left the immediate scene of the vehicle and asked "questions of a criminal nature" such

that Gerby never felt free to drive off. (Appellant's Br. at 17.)

Gerby never raised this argument before the district court. In such a circumstance, we generally examine the rulings of the district court for "plain error." United States v. Rascon, 922 F.2d 584, 588 (10th Cir. 1990). For plain error to exist, the error must be "plain or obvious" and affect substantial rights. United States v. Walser, 275 F.3d 981, 985 (10th Cir. 2001). We will not exercise our discretion to correct plain error unless it results in the conviction of one who is actually innocent, or seriously affects the "fairness, integrity or public reputation of judicial proceedings." Id. (quotation omitted). Moreover, "the unlawful detention inquiry is fact-intensive," and we may exercise our discretion not to review for even plain error when the appellant's failure to raise the objection below prevented the district court from making necessary findings of fact. Dewitt, 946 F.2d at 1502. However, we proceed to consider Gerby's argument under a plain error standard because the district court did make the relevant findings of fact.

The district court found that after Chatfield returned Gerby's license and rental agreement, "the stop ended and a reasonable person would have felt free to leave." (Appellant's App. at 136.) Thus, Gerby "consented to Officer Chatfield's subsequent questioning about guns or drugs." (Id. at 137.) As a result, the district court found "[t]his was an ordinary consensual encounter and . . . [Gerby]

consented to a search of the vehicle." (Id.)

After reviewing the record, we conclude that the district court did not commit plain error in determining that a reasonable person in Gerby's situation would have felt free to leave the scene after his documents were returned. While we have followed a bright-line rule that an encounter is not consensual unless the driver's documents have been returned to him, Bustillos-Munoz, 235 F.3d at 515, an encounter after the return of documents may still fail to be consensual if there is "evidence of a coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled." Id. The district court found that "it is obvious that Officer Chatfield's questioning was unaccompanied by any show of authority or coercion; his weapon was holstered and there was no threat to defendant." (Appellant's App. at 137.) Our independent review of the record supports these findings by the district court. Accordingly, Chatfield's questions about weapons and drugs and his request for consent to search the vehicle were part of a consensual encounter, and Gerby's consent to search was not coerced.

**B**

According to Gerby, Chatfield exceeded the scope of Gerby's consent when he began opening the duffel bags in the trunk, and therefore Chatfield's search of

- 6 -

the duffel bags was illegal.

The standard for analyzing the scope of consent to search an automobile was laid out in Florida v. Jimeno: "[W]hat would the typical reasonable person have understood by the exchange between the officer and the suspect?" 500 U.S. 248, 251 (1991). In Jimeno, the Court concluded that a grant of permission by the driver of a car to search the automobile extended to "include consent to examine a paper bag lying on the floor of the car." Id.

Later cases in this circuit have expanded upon the holding of Jimeno. In Bustillos-Munoz, we held that where a suspect had granted permission to search the vehicle, the officer "did not exceed the scope of [defendant's] consent by searching a bag found in his car," at least where the suspect "does not object when the search exceeds what he later claims was a more limited consent." 235 F.3d at 515 n.5. Indeed, we have generally held that a grant of permission to search an automobile means, absent objection or an explicit limitation by the suspect of his grant of permission, that the "officer is justified in searching the entire vehicle." Id.; see United States v. Santurio, 29 F.3d 550, 553 (10th Cir. 1994) (stating that "a general consent to search includes closed containers within the vehicle" and that "this court has specifically ruled that a failure to object to the continuation of a search indicates that the search was conducted within the scope of the consent given"); see also United States v. Patten, 183 F.3d 1190,

1192, 1194–95 (10th Cir. 1999) (holding that where a suspect granted the officer permission to "take a look at your suitcase" in the trunk and where suspect did not object when the officer opened the suitcase, the officer did not exceed the scope of consent). The district court correctly held that the officer did not exceed the scope of Gerby's consent.

## C

Gerby's final objection based on the search relates to the conversation that the officer had with him regarding his prior arrest record. Gerby argues that Chatfield distracted and intimidated him by asking him questions about his prior arrest record such that Gerby was not in a position to object to Chatfield's search of the duffel bags. Gerby did not raise this argument before the district court. Because Gerby's claim is a fact-intensive one, his failure to raise it below prevented the district court from making the appropriate factual findings. The argument is therefore waived, and we decline to consider it. Dewitt, 946 F.2d at 1502; see also United States v. Easter, 981 F.3d 1549, 1556 (10th Cir. 1992) ("[P]lain error review is not appropriate when the alleged error involves the resolution of factual disputes.").

## III

Gerby's second issue on appeal is a challenge to the district court's sentencing. In particular, Gerby argues that the district court's sentence was

based on Gerby's failure to cooperate with the government and that this reliance by the district court violated the sentencing guidelines, due process, and his Fifth Amendment right not to incriminate himself. Because Gerby did not raise this argument below, we only review the district court's actions for plain error. See Walser, 275 F.3d at 985. Reversible plain error requires an error by the district court that is "particularly egregious," "obvious and substantial," and results in "circumstances in which a miscarriage of justice would otherwise result." United States v. Saucedo, 950 F.2d 1508, 1511 (10th Cir. 1991) (citations omitted), overruled on other grounds by Stinson v. United States, 508 U.S. 36 (1993). When the alleged error is a constitutional one, we apply the plain error rule less rigidly. Walser, 275 F.3d at 985.

Under the Sentencing Guidelines, Gerby's sentencing range was 121 to 151 months. The district court sentenced Gerby to the high end of that range, 151 months. During sentencing, the district court made the following comments:

> Mr Gerby, on March 22nd, 2001, you were found within the state of Wyoming transporting approximately 210,000 ecstacy tablets in two bags which were in the trunk of your rental car. This amounted to a little over 139 pounds of a dreadful drug, a drug that would do great harm to the young citizens of this nation. In fact, it would do as much harm, I would guess as maybe even a terrorist bomb might do. You, sir, in the eyes of the Court are a virtual terrorist and you're not a citizen of this country, even though your children are.
> I regard with great seriousness the fact that you have not cooperated with the United States in any way, and, therefore, I cannot sentence you at the low end of the guidelines.

I must find in this case that the guideline level is a 32 with a criminal history category of 1, but I would observe this: That if you had committed this crime after May 1st, 2001, at that time the guideline level was increased from a 32 to a level of 38 which carries with it a sentencing range of 235 to 293 months. And if there was any way that I could do it, I would give you 293 months right now, but to do so would be an ex post facto act on behalf of this Court and I cannot do it.

I, therefore, must give you the high end, or 151 months, which is 12 years and 7 months of imprisonment. I will observe this to you: That under the sentencing guidelines of this country you have a period of one year from this date to talk and cooperate with the authorities. If you do, I will give you a serious reduction in your sentence.

I will observe that you said at the time you were arrested or shortly thereafter something about "You might as well shoot me." I don't think that has to occur. I think that on the termination of your sentence you're going to go back to Israel, but I think that under our system of laws, the witness protection program, you and your family could be given protection and that whoever it is that you were working for could not get you. And I think that you could be protected, and I'm sure the United States would for information that was serious and meaningful on your part.

However, since you have chosen to remain silent, it is the sentence and judgment of this Court that you be and you [are] hereby committed to the custody of the Attorney General of the United States to be confined in an institution to be designated by him for a term of 151 months on Count One.

(Appellant's App. at 190–92.)

According to Gerby, the district court's comments violated U.S.S.G. § 5K1.2, which provides that "[a] defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." Gerby claims that the district court's reliance on his refusal to cooperate as a rationale for giving him the maximum sentence within the guidelines range

means that the district court improperly used his failure to cooperate as an "aggravating sentencing factor."

The Tenth Circuit has yet to decide whether U.S.S.G. § 5K1.2 only applies to upward departures from the sentencing guidelines range, or whether it also applies to the selection of a sentence from within the guidelines range. We are aware of only two court of appeals cases to interpret § 5K1.2 on this issue, and both held that the provision only applies to upward departures. United States v. Burgos, 276 F.3d 1284, 1291 n.8 (11th Cir. 2001); United States v. Klotz, 943 F.2d 707, 709–10 (7th Cir. 1991). Because this court has not decided the issue and the case law from other circuits concludes that § 5K1.2 only applies to upward departures, the district court could not have committed plain error in sentencing Gerby to the high end of the guidelines range.

Gerby next argues that the district court penalized him for his failure to cooperate when that failure arose from his own stated fear of reprisal from others. According to Gerby, in such a situation any penalty for failure to cooperate violates due process. Gerby cannot cite a single case that has come to this conclusion, and we therefore again cannot conclude that the district court committed plain error.

Gerby finally argues that the district court violated his Fifth Amendment right against self-incrimination because it penalized him for his failure to

cooperate with the government. According to Gerby, if he had cooperated with the government he would have opened himself up to additional criminal liability. This argument has led to some conflicting decisions in the appeals courts that have considered it. Compare Klotz, 943 F.2d at 710–11 (rejecting the same claim because there is no "penalty" when a defendant is sentenced within the guidelines range), with United States v. Rivera, 201 F.3d 99, 100–02 (2d Cir. 1999) (reaching the opposite conclusion because defendant was penalized where the district court explicitly increased the sentence within the guidelines range because of a failure to cooperate).

However, we conclude that the district court did not commit plain error on this point. In Roberts v. United States, 445 U.S. 552, 559–61 (1980), the Supreme Court rejected a claim by a criminal defendant that increasing his sentence because of a failure to cooperate violated his Fifth Amendment right against self-incrimination. The Court found the defendant's argument "singularly unpersuasive" and explicitly noted that the defendant "did not assert his privilege or in any manner suggest that he withheld his testimony because there was any ground for fear of self-incrimination. His assertion of it here is evidently an afterthought." Id. at 560 (quotation omitted). "If [the defendant] believed that his failure to cooperate was privileged, he should have said so at a time when the sentencing court could have determined whether his claim was legitimate." Id.

We have found no evidence in the record that Gerby ever asserted before the district court that his failure to cooperate was based on a fear of self-incrimination.  Given the Supreme Court precedent that is on point, and the Tenth Circuit case law that has followed that precedent, see United States v. Ruminer, 786 F.2d 381, 385 (10th Cir. 1986) (following Roberts as "controlling" precedent that holds that "a trial judge may properly consider a defendant's refusal to cooperate with the Government by refusing to name others involved in the criminal activities"), the district court did not commit plain error.

## IV

The judgment of the district court is **AFFIRMED**.

The mandate shall issue forthwith.

ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge

- 13 -