10-0865-cr (L)
United States v. Kerik

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 31st day of March, two thousand eleven.

PRESENT:  JOSEPH M. McLAUGHLIN,
          GUIDO CALABRESI,
          REENA RAGGI,
                    *Circuit Judges*.

------------------------------------------------------------------

UNITED STATES OF AMERICA,

                *Appellee*,

     v.                                 Nos.   10-0865-cr (L)
                                                    10-872-cr (Con)

BERNARD B. KERIK,

                *Defendant-Appellant*.

------------------------------------------------------------------

APPEARING FOR APPELLANT:  ANDREW H. SCHAPIRO (Lauren R. Goldman, Hannah Chanoine, Mayer Brown LLP, New York, New York; Rhett Martin, Mayer Brown LLP, Washington, D.C., *on the brief*), Mayer Brown LLP, New York, New York.

APPEARING FOR APPELLEE:  MICHAEL BOSWORTH (Katherine Polk Failla, *on the brief*), Assistant United States Attorneys, *on behalf of* Preet Bharara, United States Attorney for the Southern District of New York, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Stephen C. Robinson, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the amended judgment entered on March 9, 2010, is AFFIRMED.

Defendant Bernard B. Kerik stands convicted on a plea of guilty to one count each of (1) obstructing the administration of internal revenue laws, see 26 U.S.C. § 7212(a); (2) assisting in the preparation of false tax returns, see id. § 7206(2); and (3) making a false statement on a loan application, see 18 U.S.C. § 1014; and five counts of (4) making false statements to federal officials, see id. § 1001. On appeal, Kerik asserts that procedural error and apparent judicial bias render his 48-month prison sentence – a variance from the applicable 27 to 33 month Sentencing Guidelines range – unreasonable. See United States v. Booker, 543 U.S. 220, 261-62 (2005) (holding that appellate courts review sentences for "reasonableness"); United States v. Canova, 485 F.3d 674, 679 (2d Cir. 2007) (recognizing that reasonableness review involves both procedural and substantive components). In reviewing these claims, we assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

1.    Standard of Review

Kerik urges us to review his claims under a relaxed plain error standard. The government contends that normal plain error review is appropriate. Because Kerik's claims fail even under the relaxed standard, we need not decide which applies.

2

2.    Lack of Notice

Kerik submits that he lacked notice of the two factors aggravating his sentence that he now asserts manifest procedural error: (1) the publication of articles accusing prosecutors of misconduct and corruption in connection with Kerik's prosecution; and (2) Kerik's failure to distance himself from these articles. See Fed. R. Crim. P. 32(d)(1)(D)(i) (requiring that Pre-Sentence Report ("PSR") "identify any factor relevant to . . . sentence"); see also Fed. R. Crim. P. 32(i)(1)(C) (requiring that parties be afforded opportunity to comment on "matters relating to an appropriate sentence").[1]  The record does not support this notice argument.

The PSR and the government's sentencing memorandum provided notice of the facts Kerik cites by discussing his violation of the district court's protective order, characterizing a Washington Times article as containing "false and defamatory accusations" about the prosecutors, and referencing Kerik's association with Anthony Modafferi, an attorney whom the district court had previously found to operate not as Kerik's legal counsel but as his "chief fundraiser and propagandist."  PSR ¶ 88; Gov't Sentencing Mem. at 38.  Moreover, the transcript shows that the district court referenced the articles charging prosecutorial misconduct early in the sentencing proceedings, specifically inviting defense counsel to comment on their apparent incongruity with the defense's portrayal of Kerik as a heroic figure worthy of sentencing consideration.  See Sentencing Tr. at 14-17 (asking counsel to

_____

[1] Kerik acknowledges, as he must, that he was not entitled to pre-sentence notice of the district court's decision to impose a non-Guidelines sentence.  See Irizarry v. United States, 553 U.S. 708, 713-16 (2008); United States v. Cavera, 550 F.3d at 194.

3

"[h]elp me understand" how "at the time that you are describing the work and the good deeds of Mr. Kerik, we also have the other side," including (1) defendant's commission of crimes over a period of years; (2) "Mr. Kerik, through individuals, malign[ing] the prosecutors" with insinuations that they pursued his prosecution "for their own personal gain"; and (3) defendant's obstruction of investigations and violations of court orders).

Defense counsel did not respond that he lacked notice of these facts. Nor did he request additional time to consider or address the identified concerns.[2] Instead, he candidly acknowledged that the cited conduct manifested Kerik's "hubris" and hypocrisy. Sentencing Tr. at 18. Nevertheless, counsel urged the district court not to judge Kerik "solely by the very bad things that he did, because there are so many other very good things that he did." Id. This exchange not only undermines Kerik's appellate claim of inadequate notice; it demonstrates sound sentencing practice. See Irizarry v. United States, 553 U.S. at 715 (noting that "[s]ound practice dictates that judges . . . make sure that the information

---

[2] This is hardly surprising given that the facts identified by the district court had been the subject of extensive bail proceedings, the last of which resulted in Kerik's remand, a ruling upheld by this court on appeal. See United States v. Kerik, 585 F.3d 726, 727 (2d Cir. 2009). Indeed, the government submitted the articles referenced by Kerik on appeal at the bail hearing as evidence of his awareness of Modafferi's media activities and Kerik's motive for providing Modafferi with case materials in violation of the district court's protective order. Cf. United States v. Lovelace, 565 F.3d 1080, 1090-92 (8th Cir. 2009) (identifying Rule 32 error when district court relied on "previously undisclosed information" known to judge from his time as a prosecutor (emphasis added)); United States v. Warr, 530 F.3d 1152, 1161-63 (9th Cir. 2008) (noting Rule 32 error in court's reliance on previously undisclosed BOP recividism study in varying upwards). Moreover, because Kerik noted potential First Amendment issues with respect to these articles in the brief he filed to oppose revocation of bail, he can hardly claim that he was prejudiced at sentencing by a purported inability to identify and raise constitutional concerns.

4

provided to the parties in advance of the hearing, and <u>in the hearing itself</u>" provides "adequate opportunity to confront and debate" relevant issues (emphasis added)).  In sum, the record fails to support Kerik's claim of inadequate notice.

3.      <u>Erroneous Use of Constitutionally Protected Conduct To Enhance Sentence</u>

Kerik asserts that the district court committed procedural error in basing a non-Guidelines sentence on constitutionally protected conduct.  Specifically, he submits that articles criticizing prosecutors were protected by the First Amendment, <u>see</u> <u>Dawson v. Delaware</u>, 503 U.S. 159, 166-68 (1992) (holding that defendant's "abstract beliefs" may not inform sentence), and that his failure to distance himself from these articles was protected by his Fifth Amendment right against self-incrimination, <u>see</u> <u>United States v. Rivera</u>, 201 F.3d 99, 101 (2d Cir. 1999) (observing that Fifth Amendment safeguards against "judicially coerced self-disclosure" extend to sentencing phase (internal quotation marks omitted)).  We need not here decide whether the conduct at issue was constitutionally protected because Kerik's procedural challenge fails for a more fundamental reason: the record does not support his argument that the district court relied on this conduct to aggravate his sentence.

In urging otherwise, Kerik cites the sentencing court's observation that "Kerik, through individuals, maligned the prosecutors," implying that they acted without "a good faith basis to believe [Kerik] did what they alleged" and "for their own personal aggrandizement" while Kerik was "really the good guy" and "really innocent of all this." Sentencing Tr. at 16-17.  Kerik also cites later district court comments indicating that he or persons acting at his direction or with his knowledge had implied that the "whole prosecution

5

[was] the work of individuals who were seeking . . . personal gain and aggrandizement, when Mr. Kerik understood that he was actually guilty of at least some of the charges" and never "stopped" or "disavowed" these insinuations. Id. at 50-51. Viewed in context, however, it is apparent that these statements were made in discussing the background to Kerik's violation of the protective order. It was that contumacious conduct, not the background that may have motivated it, that the district court permissibly cited as a ground for imposing a non-Guidelines sentence.[3] Although the conduct had already earned Kerik an obstruction enhancement to his Guidelines range, see U.S.S.G. § 3C1.1, the district court concluded that the Guidelines did not "fully take into account" the circumstances of Kerik's obstruction, which had caused the court to take the extraordinary action of revoking bail for a former Police Commissioner of the City of New York because it could no longer trust him to comply with court orders intended to ensure a fair and impartial jury. See Sentencing Tr. at 53. Such

---

[3] In the earlier colloquy about whether Kerik's character mitigated his crimes, the district court not only emphasized its concern with Kerik's obstruction, it expressly stated that it was not faulting defendant for maintaining his innocence:

> I am never suggesting for one second that any defendant needs to admit their guilt, doesn't have an absolute right to maintain their innocence throughout the proceeding and put the Government to every bit of their proof, absolutely, I believe in that.

> What is troubling to me, though, is in the course of this litigation – and we have been through some issues with this, at this late stage, right – we had Mr. Kerik, in my view, ignoring orders of this court. I sent him to jail for it.

Sentencing Tr. at 16-17.

6

a decision fell well within the court's sentencing discretion.[4]  See Kimbrough v. United States, 552 U.S. 85, 107-08 (2007); United States v. Cavera, 550 F.3d at 192.

Further, the district court expressly identified the facts – none implicating the constitutional concerns raised by Kerik – that were the basis for its decision to impose a non-Guidelines sentence.  In addition to the aforementioned (1) obstruction, these included Kerik's (2) guilty plea to a large number and variety of crimes, whereas his Guidelines range was effectively determined by reference only to his two tax offenses; (3) commission of crimes for a lengthy period from 1999 through his prosecution; (4) commission of crimes while Police Commissioner, a position of power and responsibility for enforcing the law; (5) use of public offices to facilitate crimes; (6) willingness to lie about past crimes to agents of the President of the United States in order to secure a cabinet-level position; and (7) use of the September 11, 2001 tragedy for personal gain.

On this record, we conclude that Kerik fails to demonstrate that the district court aggravated his sentence for constitutionally protected conduct, let alone that it committed plain error in doing so.

---

[4] Because we conclude that the district court did not rely on the articles in varying upward, Kerik's assertion that third-parties authored the articles is immaterial.  In any event, the sentencing record makes clear that the district court referenced Kerik's own conduct in discussing Kerik's character and violation of court orders.  See Sentencing Tr. at 16 (noting that "Kerik, through individuals, maligned the prosecutors" (emphasis added)); id. at 17 (noting Kerik's willingness to obstruct investigations by implying prosecutors were "really the bad guys"); id. at 51 (noting concern about the way "Kerik or those operating on his behest, but with his knowledge," violated court orders (emphasis added)).

4.        Purported Judicial Partiality

Kerik argues that, in any event, resentencing is warranted because an objective observer might reasonably question the sentencing judge's impartiality. A review of the record reveals no cause for serious doubt on this subject. See, e.g., United States v. Cossey, 632 F.3d 82, 89 (2d Cir. 2011) (remanding to new judge when "fairness or the appearance of . . . fairness [was] seriously in doubt" (internal quotation marks omitted)).

Although Kerik attempts to demonstrate partiality through selective quotations from the sentencing record of statements unfavorable to him, he ignores statements in which the district court also identified his positive attributes.[5] For example, the district court acknowledged that Kerik had "demonstrated . . . enormous heroism, character, discipline and good deeds" over his lifetime and that "there is much good and much to be admired, and I have always said that and never felt otherwise." Sentencing Tr. at 49. The district court also complimented Kerik's "very good" sentencing letter that "greatly impressed" the court. Id. at 32. Moreover, the district court allowed Kerik to surrender voluntarily rather than to remain in custody, and it declined to impose a fine. These circumstances do not support a claim of apparent partiality.

_____

[5] To the extent Kerik relies on the bail proceeding record to support his claim of bias at sentencing, we are not convinced. A district court's stern attitude towards the violation of its orders does not manifest bias. See United States v. Carlton, 534 F.3d 97, 100 (2d Cir. 2008) (noting that "opinions held by judges as a result of what they learned in earlier proceedings . . . are not ordinarily a basis" for identifying potential bias (internal quotation marks omitted)). Nor do we identify bias in the district court's suggestion that Kerik consult independent counsel before pleading guilty in light of possible conflicts faced by his former attorneys of record.

8

In urging otherwise, Kerik suggests that the district court took personal offense as a former prosecutor to the articles impugning the integrity of the prosecutors in his case. We are not persuaded. As we have already explained, the district court discussed these articles as background to Kerik's violation of court orders. To be sure, the district court noted the irony in Kerik (or his supporters) leveling baseless accusations of corruption against the prosecutors when it was <u>he</u> who had "used his [official] position for his own personal gain." <u>Id.</u> at 51. But the judge hardly needed a prosecutorial background to be struck by this incongruity. Nor do we identify apparent bias in the district court's statement that Kerik's use of the September 11 tragedy "for personal gain and aggrandizement is a dark place in his soul." <u>Id.</u> at 53. The observation finds support in Kerik's efforts to take $80,000 in revenue deductions for false charitable contributions in connection with speeches made about September 11. Finally, we identify nothing in the district court's reference to judicial salaries in its general discussion of the "dilemma" of low earnings faced by all public servants to manifest apparent bias against Kerik for making "bad choices" to augment his income in violation of the law. <u>Id.</u> at 19-20.

In sum, we conclude that an objective observer viewing the whole record would not question the district court's impartiality and, accordingly, we identify no ground for resentencing.

4.      Conclusion

We have considered Kerik's other arguments on appeal and conclude that they are without merit.  Accordingly, we AFFIRM the judgment of conviction.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court