In the

# United States Court of Appeals

### For the Seventh Circuit

––––––––––––––––––

No. 19-2514

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

LATASHA GAMBLE,

*Defendant-Appellant.*

––––––––––––––––––

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cr-00733-1 — **Ronald A. Guzmán**, *Judge.*

––––––––––––––––––

ARGUED MAY 27, 2020 — AUGUST 11, 2020

––––––––––––––––––

Before EASTERBROOK, HAMILTON, and BRENNAN, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Defendant Latasha Gamble was found guilty of armed bank robbery and sentenced to 151 months in prison. She challenges her sentence on two grounds that revolve around whether she used a real firearm in the robbery. First, she argues that the district court erred in finding that she used a real firearm in the robbery. Second,

she argues that the district judge violated her Fifth Amendment privilege against self-incrimination by considering at sentencing his finding that she lied to the FBI about buying and using a fake gun in the robbery and that she did not help recover the discarded gun.

We affirm. Ample evidence supported the judge's finding that Gamble used a real firearm in the robbery. Also, Gamble's Fifth Amendment rights were not violated. She did not remain silent but instead chose to tell the FBI where she got the gun and how she got rid of it. She thus waived her Fifth Amendment privilege on those topics. See *Anderson v. Charles*, 447 U.S. 404, 408 (1980). The district judge was entitled to consider her false statements in deciding on her sentence.

I.  *Factual and Procedural Background*

On November 9, 2017, defendant Latasha Gamble robbed a branch of Chase Bank in Chicago, a branch where she had worked until three months earlier. Only two Chase employees were working at the time of the robbery, Kelly Green and Lesley Rendon. Gamble entered the bank wearing a disguise and waited for a few customers to leave. When they did, Gamble pulled out a gun and pushed Green to the ground as Green opened a secured door to leave the lobby. Gamble then pointed the gun at Green and ordered her to open the bank's vault. When Green said that both employees were needed to open the vault, Gamble grabbed Rendon by the hair, pressed the gun against the back of her head, threatened to shoot her, and brought her to the vault. At trial, Rendon testified that the gun felt cold and made a clicking noise when it was against her head. Once Green and Rendon had opened the vault, Gamble ordered them to put their heads down and again

threatened to shoot them. Gamble took over $126,000 from the vault and left the bank.

Despite Gamble's attempts at disguise, both Green and Rendon had recognized her. FBI agents arrested Gamble several hours later when she showed up for work at another Chase branch, oddly enough. Gamble waived her *Miranda* rights and agreed to speak with an FBI agent. Several hours into the interrogation, Gamble admitted that she had robbed the bank earlier that day.

After she confessed, Gamble was asked questions about the gun, the money, and the clothing that she wore during the robbery. She said that the gun was a "play gun" that she had bought at a Walmart store near her home earlier that week. But a later investigation determined that Walmart did not sell any fake guns at that location or anywhere else in Illinois. Gamble also said that she disposed of the gun on Irving Park Road, stashed the money in a trash can at a nearby grocery store parking lot, and dumped the clothing in a recycling container near her work. That same day, FBI agents canvassed Irving Park Road for the gun and looked for the money and clothes, but they found nothing.[1]

A jury convicted Gamble of armed bank robbery under 18 U.S.C. § 2113. The district court sentenced Gamble to 151 months in prison, the bottom of the calculated guideline range. In explaining the guideline sentence, the court emphasized Gamble's careful planning, the vicious nature of the robbery, and Gamble's lack of remorse.

---

[1] Gamble also said at one point that she had "lost" the money. As best we can tell from the record, the money has not been recovered.

II. *Defendant's Challenges to Her Sentence*

On appeal, Gamble asserts two errors in her sentencing. First, she argues that the district court erred in finding that she used a real firearm in the robbery. This error, we are told, led to both a miscalculation of the applicable Guidelines range and reliance on misinformation in considering the 18 U.S.C. § 3553(a) factors and determining the appropriate sentence. Second, Gamble argues that the district court violated her Fifth Amendment privilege against self-incrimination by considering her statements to the FBI about the firearm and faulting her for failing to cooperate with the authorities to recover the firearm.

A. *Accuracy of Information at Sentencing*

The Sentencing Guideline for robbery raises the offense level in different degrees based on use of different types of weapons. The court here applied the six-level enhancement for using a real firearm in the robbery, see U.S.S.G. § 2B3.1(b)(2)(B), rather than a four-level enhancement for a using a dangerous weapon, which may include a fake gun, § 2B3.1(b)(2)(D).

At sentencing, the government argued for the higher enhancement and presented evidence that the firearm was real. First, the FBI agent who interrogated Gamble testified based on his expertise with firearms that the gun in still photographs taken during the robbery appeared to be "a 1911-style pistol … patterned after the Colt 1911." This firearm, he testified, would make a clicking noise if the trigger were pulled if there were no round in the chamber, consistent with the noise described by Rendon at trial. Second, the agent testified about Gamble's story that she used a fake gun that she purchased at

Walmart, the discovery that Walmart does not sell fake guns in Illinois, and the fact that agents were unable to recover the gun where she told them it would be. Third, the government highlighted evidence that Gamble had texted someone the day before the robbery asking for a "lender." That person responded that he found someone who would "do it for the 500" but needed confirmation that "she'll get it back at 11."

The judge found that Gamble had used a real gun in the robbery and faulted Gamble for failing to admit her culpability in the crime. He concluded that "she lied about the handgun being a toy," reasoning that "[i]f the handgun had been a toy, she would not have lied to the FBI agents about where she got the toy." In imposing the sentence, the district judge also reviewed the defendant's plans for the robbery and the evidence of premeditation, noting that the defendant "arranged to rent a gun [for] $500."

Gamble frames her argument in terms of due process. A defendant has a due process right to be sentenced based on reliable information. *United States ex rel. Welch v. Lane*, 738 F.2d 863, 864 (7th Cir. 1984), citing *United States v. Tucker*, 404 U.S. 443, 447 (1972), and *Townsend v. Burke,* 334 U.S. 736, 741 (1948). A sentence must be vacated if a defendant shows both that inaccurate information was before the sentencing court and that the court relied, at least over a timely objection, on that inaccurate information in choosing a sentence. *United States v. Oliver*, 873 F.3d 601, 608–09 (7th Cir. 2017). In making her argument, Gamble says that the evidence from which the district judge inferred that she rented and used a firearm was "inaccurate" and that the judge relied upon that inaccurate information in sentencing her.

The premise of Gamble's due process argument is that the judge made a factual error in determining that she used a real firearm. She has framed as a due process argument what otherwise looks like a fairly routine sort of fact-based appeal under the Sentencing Guidelines. In this case, however, the court's finding about a real firearm affected not only the guideline calculation but also the more general explanation of the ultimate sentence. We review the sentencing court's procedure *de novo* and the underlying factual findings only for clear error. *United States v. Pennington*, 908 F.3d 234, 238 (7th Cir. 2018). Because the finding about using a real firearm affected the judge's ultimate sentencing decision and not just the guideline determination, we could not deem any guideline error here harmless. *United States v. Miller*, 900 F.3d 509, 514–15 (7th Cir. 2018).

The district court did not clearly err in finding—based on the evidence summarized above—that the defendant used a real firearm in the robbery. First, the gun's appearance and the clicking noise it made were consistent with its being a real firearm. Second, the text exchange about renting a "lender" for $500 seems likely to have referred to a real firearm. The context suggested that Gamble was acquiring *something* for the robbery, and who would rent a toy gun for $500? Third, and most important, the government presented compelling evidence that Gamble lied to the FBI about where she obtained and how she disposed of what she claimed was a toy gun. The judge reasonably inferred from the lies that the firearm was real. Gamble has thus failed to show a clear factual error in the guideline calculation or as a foundation for her due process argument. Cf. *Welch*, 738 F.2d at 865 (sentencing court relied on a fact that both sides later agreed was false); *Miller*, 900 F.3d at 514–15 (vacating sentence under *Welch*

where district judge miscounted and relied upon prior felony convictions). To the extent that Gamble argues that the judge relied at sentencing on a finding that she *rented* a gun, this finding was not clearly erroneous given the content of the text exchange and other evidence that she used a real firearm in the robbery. In any event, the difference between owning, borrowing, and renting a gun would not have been material to the sentence.

B.  *Fifth Amendment Privilege*

Because there was insufficient evidence to prove beyond a reasonable doubt that Gamble used a real firearm in the robbery, she was not charged under 18 U.S.C. § 924(c) with using a firearm in a crime of violence. If she had admitted to using a real firearm, told authorities how she obtained it, or led the authorities to recover the firearm, the government would have had the proof it needed to convict her of the additional § 924(c) offense with its mandatory minimum consecutive sentence. Gamble claims that by considering her statements and conduct aimed at avoiding a § 924(c) charge and conviction, the district court imposed an unconstitutional penalty for invoking her Fifth Amendment privilege against self-incrimination.

The government argues that Gamble forfeited her Fifth Amendment argument by failing to raise it in the district court. We disagree. The factual foundation for the argument was the court's explanation of her sentence. Federal Rule of Criminal Procedure 51(a) provides that a party need not state an "exception" to a ruling the court has already made in order to preserve her rights on appeal, so the argument was not forfeited. *Pennington*, 908 F.3d at 238.

On the merits of the argument, the Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself." This privilege extends to sentencing. *Mitchell v. United States*, 526 U.S. 314, 322 (1999) (Fifth Amendment provides a "safeguard against judicially coerced self-disclosure"), quoting *Brown v. United States*, 356 U.S. 148, 156 (1958). A court impermissibly burdens the exercise of this privilege by penalizing its invocation. *Spevack v. Klein*, 385 U.S. 511, 515 (1967), citing *Griffin v. California*, 380 U.S. 609, 614 (1965). Other circuits have held that a court may not penalize a defendant at sentencing for failing to cooperate when doing so would force the defendant to admit guilt to uncharged crimes. See *United States v. Rivera*, 201 F.3d 99, 102 (2d Cir. 1999); *United States v. Benjamin*, 138 F.3d 1069, 1073 n.2 (6th Cir. 1998), citing *United States v. Barrett*, 890 F.2d 855, 866 (6th Cir. 1989); *United States v. Safirstein*, 827 F.2d 1380, 1388 (9th Cir. 1987); see also *Roberts v. United States*, 445 U.S. 552, 559 (1980) (argument that judge punished defendant with higher sentence for exercising Fifth Amendment privilege and not cooperating would merit "serious consideration" if properly presented).

At the same time, a defendant's decision not to cooperate with the authorities in a criminal investigation may be a relevant and permissible consideration for a judge deciding on an appropriate sentence. *Roberts*, 445 U.S. at 557–58. A defendant who cooperates may be rewarded with a lower sentence, just as a defendant who pleads guilty may be rewarded with a lower sentence. *United States v. Turner*, 864 F.2d 1394, 1398 (7th Cir. 1989). Our criminal justice system functions by "rewarding" the accused who gives up her constitutional rights. See *Missouri v. Frye*, 566 U.S. 134, 144 (2012) ("[Plea bargaining] is

not some adjunct to the criminal justice system; it *is* the criminal justice system."), quoting Robert E. Scott & William J. Stuntz, *Plea Bargaining as Contract*, 101 Yale L.J. 1909, 1912 (1992).

The problem posed by these two principles is evident. To determine whether a sentence impermissibly *punished* a defendant for exercising her privilege against compelled self-incrimination or permissibly *denied a reward* for failing to cooperate, a reviewing court would need to identify a baseline sentence against which to compare. We need not decide here whether this sentence applied a penalty or denied a reward. The more basic problem for Gamble is that she was not "silent" on how she obtained and disposed of the firearm.

The Fifth Amendment privilege can be waived, and the scope of the waiver is determined by the subject matter on which the defendant breaks her silence. The Supreme Court cases on cross-examination of testifying criminal defendants illustrate the consequences of breaking one's silence. A defendant who takes the stand at trial may be cross-examined and have her testimony impeached, and a refusal to answer an appropriate question in cross-examination may be held against her. *Kansas v. Cheever*, 571 U.S. 87, 94 (2013), citing *Fitzpatrick v. United States*, 178 U.S. 304, 315 (1900), and *Brown*, 356 U.S. at 156; accord, e.g., *United States v. Kovic*, 684 F.2d 512, 515–16 (7th Cir. 1982). Similarly, an accused "who voluntarily speaks after receiving *Miranda* warnings" may be cross-examined about prior inconsistent statements: "As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson*, 447 U.S. at 408; see also *United States v. Agee*, 597 F.2d 350, 354–56 (3d Cir. 1979) (en

banc).[2] To invoke the privilege against self-incrimination, a defendant must have actually maintained her silence. She may not protest when her statements themselves are scrutinized.[3]

This threshold rule for invoking the privilege applies with full force to statements made by a *Mirandized* suspect during interrogation. Just as a prosecutor may ask about a prior inconsistent statement in cross-examining a defendant at trial, a sentencing judge may consider a defendant's statements—and draw inferences from those statements—in considering the § 3553(a) sentencing factors and imposing an appropriate sentence. If the defendant has broken her silence, there is no privilege.

Gamble was free to remain silent on the matter of the firearm, but she did not. Instead, she told the FBI that the firearm was a "play gun" that she bought at a Walmart store near her home and that she threw the firearm out on Irving Park Road. The judge reasonably determined that these statements were lies and faulted Gamble for lying to the authorities instead of

---

[2] *Anderson* addressed not the Fifth Amendment privilege but a criminal defendant's due process rights under the Fourteenth Amendment. See *Doyle v. Ohio*, 426 U.S. 610, 618–19 (1976) (holding that the prosecution may not use a defendant's silence against him after he has received government assurances). But the "silence" it contemplated is the privilege against self-incrimination provided by the Fifth Amendment and protected by *Miranda*.

[3] Other circuits have observed that the scope of such a waiver must be strictly limited to subject matter of the defendant's statements. *Hendrix v. Palmer*, 893 F.3d 906, 925 (6th Cir. 2018); *United States v. Caruto*, 532 F.3d 822, 830 (9th Cir. 2008). Here, the judge's consideration of the firearm issue was based on the defendant's statements on exactly that subject.

cooperating. The privilege against self-incrimination is a privilege to remain silent, not a privilege to lie without consequence. See *Harris v. New York*, 401 U.S. 222, 226 (1971). The district court did not violate Gamble's Fifth Amendment rights by considering her statements at sentencing.

The judgment of the district court is

AFFIRMED.