In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 18-1375

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JESSE PENNINGTON,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 17-CR-00017-2 — **James D. Peterson**, *Chief Judge.*

———————————

ARGUED OCTOBER 3, 2018 — DECIDED NOVEMBER 5, 2018

———————————

Before MANION, HAMILTON, and BRENNAN, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Jesse Pennington pleaded guilty
to distributing a Schedule I controlled substance in violation
of 21 U.S.C. § 841(a)(1). The district court sentenced her to one
year and one day in prison, within the Sentencing Guidelines
range of ten to sixteen months in prison. Pennington does not
argue that her sentence was substantively unreasonable, but
she argues that the district court made procedural errors in
sentencing her. She first argues that the district court should

not have compared her to one of her co-defendants when determining her sentence because the two were not similarly situated. Next, she argues that the court violated her due process rights by twice relying on inaccurate information at sentencing.

We affirm. The district court's comparison of Pennington to her co-defendant was not a procedural error. The comparison was reasonable and did not exclude consideration of other factors that 18 U.S.C. § 3553(a) requires courts to consider. We also find that the court did not violate Pennington's due process rights by relying on inaccurate information. Although the judge made a factual error in explaining the sentence orally, he corrected the error in the written explanation, indicating that the error did not affect the ultimate sentence.

I.  *Factual and Procedural Background*

In the autumn of 2015, law enforcement in Madison, Wisconsin, began investigating a ring distributing methylenedioxymethamphetamine, more commonly known as MDMA or Ecstasy, and other controlled substances. An undercover officer bought Ecstasy from Pennington twice in late 2015. The officer also met with Pennington on two other occasions around that time intending to purchase Ecstasy, but the officer never completed those sales. In September 2016, the officer again twice bought Ecstasy from Pennington. And in October 2016, the officer tried to purchase crack cocaine from Pennington, but she lacked direct access to that drug.

A grand jury indicted Pennington and three others, including JonPaul Dotson, on a total of eleven counts of distributing Ecstasy and crack cocaine. The indictment charged Pennington in two of the counts. She pleaded guilty to one.

At the sentencing hearing, the government requested a prison sentence within the undisputed guideline range of ten to sixteen months. Pennington's involvement in the drug ring was at "the bottom rung of the ladder," the government acknowledged, and the court also already had sentenced Pennington's three co-defendants: two of them to four years in prison, and Dotson to about seven months of time served in pretrial detention. The judge noted that Dotson was "probably … the smallest" rung of the ladder, a characterization that the government agreed with because Dotson "did one distribution [of crack cocaine] on one occasion." Pennington argued for probation rather than prison. Arguing that Pennington "needs help, not punishment," her lawyer emphasized Pennington's traumatic life experiences, her need to care for her children, and her cooperation with law enforcement.

The judge sentenced Pennington to one year and one day. (The "and one day" meant that she would be eligible to earn a 15% good-time credit. See 18 U.S.C. § 3624(b).) The judge stated that "the biggest driver" of the sentence was the seriousness of the crime and the need to avoid "unwarranted disparities between similarity-situated defendants." Pennington was more culpable than Dotson, the judge found, because Dotson "was involved in essentially one transaction." The judge explained:

> You were involved in a pattern of drug dealing that began as early as October 2014 and went through October ['16] There might be a gap in there where there aren't continuous transactions, but there was a sustained period of time of almost two years … that begins in the fall of October '14 and continues to October '16. Even

> if it wasn't thoroughly continuous, it was a long
> period of drug dealing.

The record shows, however, that Pennington's involvement with the drug operation actually began in 2015, not 2014.

The judge deemed it unfair to give Pennington a sentence of probation when "even Mr. Dotson … ended up serving a term of incarceration" (i.e., pretrial detention). He also mentioned Pennington's "very difficult upbringing," but he added that Pennington is not "necessarily a very good historian of her own past." The judge observed that Pennington deserved a sentence at the low end of the guideline range because she had accepted responsibility for her actions and cooperated with the authorities. In his written statement of reasons, the judge reiterated much of his explanation, with one important change: he corrected his oral error and wrote accurately that Pennington's "drug dealing activities began as early as fall 2015 and continued in the fall of 2016."

II. *Analysis*

On appeal, Pennington argues that the court committed procedural errors by failing to consider properly all of the 18 U.S.C. § 3553(a) factors and relying on inaccurate information to determine her sentence. She contends that the district court erroneously focused almost exclusively on her culpability relative to JonPaul Dotson, who she argues was not similarly situated. She further argues that the judge procedurally erred by relying on inaccurate information because she is not a "poor historian" of her traumatic past and because she did not sell drugs for the "sustained period of time" of two years.

A. *Standard of Review*

The government argues that Pennington forfeited these arguments by not raising them in the district court. Pennington points out correctly that Federal Rule of Criminal Procedure 51(a) provides that a party need not state an "exception" to a ruling the court has already made. See, e.g., *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) ("the rules do not require a litigant to complain about a judicial choice after it has been made"). Pennington's arguments on appeal challenge the district court's explanation of its sentencing decision. If she had made them in the district court, they would have been the kind of post-decision exceptions that Rule 51(a) provides a party need not raise to preserve her appellate rights. See *United States v. Cunningham*, 429 F.3d 673, 679–80 (7th Cir. 2005). Either party, however, could have avoided this appeal by speaking up. See *United States v. Donelli*, 747 F.3d 936, 941 (7th Cir. 2014); *Cunningham*, 429 F.3d at 679–80.

Both of Pennington's claims—that the district court failed to consider the § 3553(a) factors properly and that it relied on inaccurate information—assert procedural errors. See *Gall v. United States*, 552 U.S. 38, 51 (2007). In the absence of forfeiture, we review the sentencing court's procedure *de novo*. *United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010), citing *United States v. Smith*, 562 F.3d 866, 872 (7th Cir. 2009). We review underlying factual findings for clear error. *Id.*, citing *United States v. Heckel*, 570 F.3d 791, 793 (7th Cir. 2009).

B. *Section 3553(a) Factors*

Pennington argues that the sentencing court erred by failing to give meaningful consideration to the § 3553(a) factors

that must be considered in federal sentencing.[1] She first ar-
gues that § 3553(a)(6), which instructs courts to avoid

---

[1] Section 3553(a) provides as follows:

> Factors to be considered in imposing a sentence.—The court
> shall impose a sentence sufficient, but not greater than necessary,
> to comply with the purposes set forth in paragraph (2) of this sub-
> section. The court, in determining the particular sentence to be
> imposed, shall consider—

> (1) the nature and circumstances of the offense and the history
> and characteristics of the defendant;

> (2) the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect
> for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant;
> and

> (D) to provide the defendant with needed educational or vo-
> cational training, medical care, or other correctional treatment in
> the most effective manner;

> (3) the kinds of sentences available;

> (4) the kinds of sentence and the sentencing range established
> for—

> (A) the applicable category of offense committed by the appli-
> cable category of defendant as set forth in the guidelines—

> (i) issued by the Sentencing Commission pursuant to section
> 994(a)(1) of title 28, United States Code, subject to any amend-
> ments made to such guidelines by act of Congress (regardless of
> whether such amendments have yet to be incorporated by the
> Sentencing Commission into amendments issued under section
> 994(p) of title 28); and

sentencing disparities among defendants with similar records and criminal conduct, does not justify comparing co-defendants in the same case. She also argues that the district court focused on comparing her to Dotson to the exclusion of all the other § 3553(a) factors. We disagree.

As an initial matter, Pennington is incorrect in saying that the "unwarranted disparities" factor in § 3553(a)(6) applies

---

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

(B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

only to defendants across districts and not to co-defendants in the same case. See *United States v. Solomon*, 892 F.3d 273, 278 (7th Cir. 2018), citing *Gall*, 552 U.S. at 55–56. And although a sentencing judge must consider each factor, she need not give them all the same weight. The judge is afforded great discretion in weighing the different factors. See *Gall*, 552 U.S. at 52–56. Here, the judge mentioned Pennington's history and characteristics but ultimately found that the seriousness of the crime and the need to avoid sentencing disparities justified a sentence higher than the probation Pennington requested. The judge also credited Pennington's cooperation with law enforcement, relying on this fact in issuing a sentence toward the bottom of the Guidelines range. Because the judge adequately considered the § 3553(a) factors, there was no procedural error on this score.

Pennington also argues that the court violated her right to an "individualized" sentence by linking her sentence to Dotson's. See *Gall*, 552 U.S. at 50. But Dotson's seven-month sentence was not random or happenstance. The judge found that seven months was "reasonable and no greater than necessary." See § 3553(a). Because Pennington was more culpable than Dotson—and because the other § 3553(a) factors did not require a below-guideline sentence—the court arrived at a sentence for her that it similarly found reasonable and no greater than necessary.

C. *Accuracy of Information at Sentencing*

A defendant has a due process right to be sentenced based on accurate information. *United States v. Tucker*, 404 U.S. 443, 447 (1972); *U.S. ex rel. Welch v. Lane*, 738 F.2d 863, 864–65 (7th Cir. 1984). To succeed on this attack on her sentence, Pennington must show that inaccurate information was before the

court and that the court relied upon it. *United States v. Oliver*, 873 F.3d 601, 608–09 (7th Cir. 2017), citing *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003). Pennington argues that the district court violated this principle twice—first when the judge said that she was not "necessarily a very good historian of her own past," and again when he said that she had sold drugs for two years instead of one. Again, we disagree.

It is difficult to construe the judge's passing comment that Pennington is a poor historian of her past as a factual finding. Even if it were, "we defer to a district court's determination of witness credibility, which can virtually never be clear error." *Pulley*, 601 F.3d at 664, citing *United States v. Acosta*, 534 F.3d 574, 584 (7th Cir. 2008); see generally *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). We need not repeat Pennington's various inconsistencies and memory lapses that supported the judge's comment. The judge's comment was not clearly erroneous.

The closest question in this appeal stems from a factual mistake in the court's sentencing explanation. The judge said that Pennington had been involved in selling drugs for two years beginning in 2014 rather than only in the autumns of 2015 and 2016. Such factual errors in a judge's explanation of a sentence can easily require a remand for re-sentencing based on accurate information if there are indications that the inaccurate information mattered in the sentencing decision. E.g., *United States v. Miller*, 900 F.3d 509, 513–14 (2018) (finding plain error and remanding where district judge stated wrong number of defendant's prior felony convictions, both orally and in written explanation); *United States v. Corona-Gonzalez*, 628 F.3d 336, 342–43 (7th Cir. 2010) (finding plain error and remanding where presentence report said erroneously that

defendant had previously been deported and had returned to United States to distribute methamphetamine, and court emphasized those points in explaining sentence); *Welch*, 738 F.2d at 865–66 (affirming writ of habeas corpus where sentencing judge incorrectly thought defendant had prior conviction for armed robbery instead of robbery).

In this case, however, we are satisfied that this error was corrected in the court's written explanation of reasons, indicating that the difference between the accurate and inaccurate information did not actually affect the sentence. When oral and written pronouncements of a *sentence* conflict, the oral controls so long as it was unambiguous. *United States v. Daddino*, 5 F.3d 262, 266 (7th Cir. 1993), quoting *United States v. Makres*, 851 F.2d 1016, 1019 (7th Cir. 1988).[2]

While that is the rule for a pronouncement of a sentence itself, we have not applied the same strict rule to a judge's *explanation* of a sentence. In fact, we have held the opposite. *United States v. Pankow*, 884 F.3d 785, 791 (7th Cir. 2018) ("In addition to the court's remarks at sentencing, we also look to the written statement of reasons to evaluate the sufficiency of the sentencing rationale."), citing *United States v. Blackman*, 830 F.3d 721, 728 (7th Cir. 2016) (collecting cases). The judge's written explanation corrected his oral misstatement of the facts without changing the sentence itself. That correction distinguishes this case from *United States v. Miller*, where we remanded a sentence where the judge had misstated the

---

[2] The court's oral statement about the duration of Pennington's drug-dealing was inaccurate, not ambiguous. But whether the court relied on the inaccuracy requires close attention. We may consider the written explanation without violating this rule.

defendant's criminal history a total of four times, including both oral and written explanations. 900 F.3d at 513–15. We conclude from the written correction that, in the end, whether Pennington sold Ecstasy for one year or two years did not affect her sentence. More material was that she engaged in more drug dealing than Dotson—a fact that is true regardless of the court's initial oral misstatement.

Pennington's sentence is

AFFIRMED.