**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 18, 2019
Decided January 17, 2020

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 18-2671

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:17-CR-00062-001 |
| ZAN MORGAN, *Defendant-Appellant*. | James D. Peterson, *Chief Judge*. |

## O R D E R

Zan Morgan pleaded guilty to unlawfully possessing a firearm after police officers discovered a handgun during a traffic stop. The district court increased his base offense level by four levels under § 2K2.1(b)(6)(B) of the Sentencing Guidelines for possessing the firearm "in connection with another felony offense," namely, drug trafficking. Morgan appeals his sentence, arguing that, in applying the four-level increase, the court used the wrong legal standard and made clearly erroneous factual findings. Because the district court properly found by a preponderance of the evidence that the firearm was connected to drug trafficking, and did not rely on factual errors, we affirm.

## I.  BACKGROUND

On March 4, 2017, police officers in Eau Claire, Wisconsin, pulled Zan Morgan over for speeding. When they smelled marijuana, the officers ordered him out of the car, and Morgan consented to a search. In his pockets, officers found a cellphone, $1,500 in cash, 2.35 grams of heroin, and two plastic baggie corners that contained cocaine residue. The officers arrested Morgan and searched the car, where they found another cellphone of his (and a third belonging to his passenger). Morgan told the officers he had a gun under his seat, which they found, and he had a prior felony conviction. Later, he pleaded guilty to unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

In the presentence investigation report, the probation officer recommended a four-level increase to the base offense level under U.S.S.G. § 2K2.1(b)(6)(B) for possessing the firearm in connection with another felony offense: possession with intent to distribute drugs. Morgan filed an objection to the PSR, arguing the amount and packaging of the drugs indicated the drugs were for personal use, not for dealing. Morgan reiterated that objection in his sentencing memorandum, arguing the "small quantity of drugs" did not indicate drug trafficking. Although U.S.S.G. § 2K2.1 was the applicable guideline, Morgan's sentencing memorandum argued the standard for applying U.S.S.G. § 2D1.1 was not met, and discussed an example—"an unloaded hunting rifle in the closet"—from the commentary for § 2D1.1. (Both § 2D1.1, which applies to drug crimes, and § 2K2.1(b)(6)(B), which applies to gun crimes, can provide for increasing the offense level for mixing firearms and drugs. The former adds two levels for possessing a "dangerous weapon," and the latter four levels for possessing a firearm "in connection" with another felony. Because he pleaded guilty to a gun crime, not a drug crime, Morgan was not sentenced under § 2D1.1.)

At the sentencing hearing, after hearing argument, the district court adopted all the factual findings in the PSR and rejected Morgan's objection to the four-level increase. The court began by saying: "[T]he guidelines kind of tilt in favor of the enhancement based on the proximity of the firearm to the crime itself and it gives me the sort of presumption that I apply this enhancement unless it's clearly improbable that the firearm was not connected to the offense." The court continued: the guideline "gives me the prototypical example of the unloaded hunting rifle locked in a closet" as one that "was not connected to the offense." Both the "clearly improbable" language and the example of the hunting rifle come from the commentary to § 2D1.1.

The district court then quoted the applicable guideline, § 2K1.2, stating: "[W]hen it says 'connected to' [it] means something more than just being in the same place" or "physically present." The court asked whether "this [was] a crime that it could be at least plausible or reasonable to conclude that that firearm was there to somehow facilitate that drug crime."

The district court then found satisfaction "to a preponderance" of the evidence that the firearm was there to facilitate a drug crime. Although the quantity of drugs could "conceivably" be a personal-use amount, the court explained, "that's not the only evidence we have." The court identified several factors "suggestive of drug trafficking": the baggies with drug residue, the second cell phone, and the "substantial amount" of cash. The court went on to discuss an arrest "maybe a week before" the arrest in this case, when Morgan was found with "even greater cash" during a traffic stop. The court noted evidence that the car had been "opened up to store drug trafficking materials." Finally, the court discussed Morgan's prior convictions, including several for drug-trafficking offenses years ago.

The court again noted "the guidelines are tilted in favor of the enhancement" and also stated "[e]ssentially I have to find that it's clearly improbable that the firearm was not connected to the drug offense." The court then concluded it was "actually quite probable that the firearm was indeed connected to the drug trafficking offense and that the point of carrying that gun was in case … Mr. Morgan needed to protect the proceeds of the drug trafficking or the drugs themselves." Referring to the discussion in *United States v. Wyatt*, 102 F.3d 241, 248 (7th Cir. 1996), the district court nevertheless declined to presume that the gun was necessarily a "tool" of the drug trade. Rather, "there had to be something … to show that there was actually some drug crime that was facilitated or assisted." The court concluded that standard was met.

After also applying a two-level reduction for acceptance of responsibility, the court determined the guidelines range was 46 to 57 months. The court sentenced Morgan to 48 months' imprisonment.

In the written statement of reasons, the district court provided a more condensed explanation for the four-level increase:

> In this case, the gun was not on the defendant, but it was in close
> proximity to him and the drugs. While it is not the type of firearm that
> would be used for hunting, it is the kind that would be used during a

drug deal to protect the drugs or drug proceeds. For the enhancement to apply, the firearm cannot just be present, but must also have the potential to facilitate the crime. … [H]ere, the gun clearly has the potential to facilitate a drug trafficking offense. In this case, officers located not only the gun and small quantities of drugs, they also located multiple baggies with drug residue, a second cellphone, and a substantial amount of cash, all of which suggests drug dealing. The defendant had also been arrested for possession of marijuana in Eau Claire shortly before his arrest in this case. During that arrest, officers located even more cash and speculated the defendant had used compartments in his vehicle to store drugs. Further the defendant has a history of drug trafficking offenses. By a preponderance of the evidence, the defendant possessed the firearm to protect his drugs or drug proceeds.

## II. ANALYSIS

Morgan contends the district court erred in applying the four-level enhancement, arguing specifically that the district court applied the wrong standard, relied on inaccurate information, and drew conclusions unsupported by the evidence. We review de novo procedural errors at sentencing. *United States v. Adams*, 934 F.3d 720, 727 (7th Cir. 2019). Procedural errors include misinterpreting the guidelines, *see id*., and relying on inaccurate information, *United States v. Pennington*, 908 F.3d 234, 238 (7th Cir. 2018). Factual findings are reviewed for clear error. *See id*.

None of Morgan's arguments persuade us. Although the district court alluded to an incorrect standard, it ultimately applied the correct one. And the district court did not clearly err in drawing factual inferences when applying that standard.

### A. *Whether the district court applied the correct standard*

Morgan first argues the district court erred by citing § 2D1.1(b)(1) (possession of a dangerous weapon during a drug crime) instead of § 2K2.1(b)(6)(B) (possession of a firearm in connection with another felony offense). The two-point increase in § 2D1.1(b)(1) applies unless it is "clearly improbable" that the weapon was connected to the drug offense. Section 2K2.1(b)(6)(B), however, requires the court to determine, by a preponderance of the evidence, that the defendant possessed the firearm "in connection with" the other felony offense. Morgan argues, therefore, the district court lowered the applicable standard.

The government disagrees with Morgan's characterization of the hearing and argues the district court ultimately applied the correct guideline provision. First, however, the government contends Morgan waived his argument entirely by "inviting" the district court to commit error by applying the wrong standard. Regardless of whether Morgan's argument to the district court constituted an "invitation" to commit legal error, we caution Morgan about blaming the district court for discussing arguments he raised. *United States v. Grisanti*, 943 F.3d 1044, 1052 (7th Cir. 2019) (finding appellant invited the supposed error by making argument in his sentencing memorandum). Countless defendants have argued this court must order resentencing because a district court did *not* give sufficient attention to their arguments. Morgan raised arguments under § 2D1.1 without clarifying he was drawing an analogy to a similar, but inapplicable, guideline.

In any event, the district court did not apply the wrong legal standard, so there was no error. Although the court discussed § 2D1.1(b)(1) at the sentencing hearing, it spent more time discussing § 2K2.1(b)(6)(B), and in the end the court applied the proper standard. The court made clear it did not presume Morgan possessed the handgun in connection with drug trafficking. In fact, it explicitly said it would not "short-circuit" its analysis by applying the enhancement whenever guns and drugs are both present despite the "wide[] acknowledge[ment] that guns are tools of the trade." *See United States v. Wyatt*, 102 F.3d 241, 248 (7th Cir. 1996) (internal citations omitted). Critically, the district court correctly recognized the government bore the burden to establish the connection between the firearm and a drug offense, instead of requiring Morgan to come forth with evidence to rebut a presumption, as it would have done under the § 2D1.1(b)(1) standard. *See United States v. Starks*, 309 F.3d 1017, 1026 (7th Cir. 2002).

In assessing whether the firearm and drug trafficking were connected, the district court considered a list of findings supporting such a connection, as is consistent with § 2K2.1(b)(6)(B). After making those findings, the court then concluded, by a preponderance of the evidence, "[it] is actually quite probable that the firearm was indeed connected to the drug trafficking offense and that the point of carrying that gun was in case … Mr. Morgan needed to protect the proceeds of the drug trafficking or the drugs themselves." Moreover, the court's statement that "the guidelines kind of tilt in favor of the enhancement based on the proximity of the firearm to the crime itself" is consistent with Application Note 14(B) to § 2K2.1(b)(6)(B), which states the application of the enhancement is "warranted" if the firearm is "found in close proximity" to the drugs.

Further, as the government correctly argues, the district court clarified its reasoning in writing, as it may do. Although a district court may not change a sentence in its statement of reasons, *United States v. McHugh*, 528 F.3d 538, 539 (7th Cir. 2008), it may use the written statement to correct or clarify its explanation, *Pennington*, 908 F.3d at 240. We have stated we will not "remand[] for an oral repetition of what was said in writing," *United States v. Reed*, 859 F.3d 468, 474 (7th Cir. 2018), and that is essentially what Morgan asks us to do.

### B.  *Whether the district court relied on inaccurate information*

Morgan also argues the district court violated his due-process rights by relying on inaccurate information to conclude he was engaged in drug trafficking. *See United States v. Tucker*, 404 U.S. 443, 447, (1972); *Pennington*, 908 F.3d at 239. To succeed on such an argument, Morgan "must show that inaccurate information was before the court and that the court relied upon it." *Pennington*, 908 F.3d at 239.

The district court relied on the following evidence to support the four-level increase for a connection to drug trafficking: the heroin found at the scene, baggie corners with drug residue, a second cell phone, $1,500 in cash, the proximity of the gun to the drugs, and Morgan's history of drug trafficking, including an arrest after another very recent traffic stop. Based on our precedent, this evidence is sufficient to support the district court's inference of drug trafficking.

Specifically, the proximity of the gun to the drugs alone supports the enhancement. Application Note 14 states § 2K2.1(b)(6)(B) is "warranted" if the firearm is "found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia." This means "proximity alone provides the evidence that the two are connected." *United States v. Clinton*, 825 F.3d 809, 812 (7th Cir. 2016). Indeed, this court referred to the Application Note's proximity standard as a "presumptive determination." *Id*. Here, officers discovered the drugs in Morgan's pockets and the gun readily accessible under the rear portion of his seat. Morgan contends the district court did not expressly find that the gun was in "close proximity" to the drugs, but that is incorrect. The court adopted the PSR wholesale, and the PSR explained the gun was in "close proximity" to the drugs and "readily accessible" to Morgan. At the hearing, the district court stated the gun "was right there." And in the statement of reasons, the court clarified the gun was "in close proximity to him and the drugs." Because that finding is not clearly erroneous, the enhancement applies.

Because "close proximity … allows the court to find … a connection without any further evidence," *Clinton*, 825 F.3d at 812, the district court did not have to cite additional factors. But the other factors the court cited were permissible inferences of drug trafficking, even if each would have been insufficient individually. Plastic baggies and baggie corners are "tools of the trade" and "indicia" of drug trafficking. *United States v. Evans*, 826 F.3d 934, 938 (7th Cir. 2016); s*ee also United States v. Thomas*, 845 F.3d 824, 827 n.2 (7th Cir. 2017) (explaining that drug dealers commonly cut the corners off baggies to store drugs efficiently). Morgan argues the small quantity of heroin and the empty baggies of cocaine indicated personal use, but the district court said the totality of the evidence rendered that unlikely. And it is well established there cannot be clear error "when a district court chooses between two permissible inferences." *United States v. Rice*, 673 F.3d 537, 540 (7th Cir. 2012). Further, the bare assertions of Morgan's lawyer are not evidence the drugs were for personal use. *See United States v. Chapman*, 694 F.3d 908, 914 (7th Cir. 2012).

Morgan also asserts the $1,500 in cash was from a legitimate source (selling pit bull puppies), but we have repeatedly held that large amounts of cash indicate drug dealing when there is other suspicious evidence at the site. *United States v. Jumper*, 497 F.3d 699, 707 (7th Cir. 2007); *United States v. Cervantes*, 19 F.3d 1151, 1153 (7th Cir. 1994). We have also recognized drugs, cash, and guns are often connected. *United States v. Ramirez*, 783 F.3d 687, 691–92 (7th Cir. 2015) (affirming a sentence in which the district court reasoned that the presence of drugs and cash made the presence of a gun likely). Further, although Morgan stated otherwise at oral argument, he never argued in the district court the cash was from a legitimate business; his PSR reflects he raised the "pit bull puppy" defense to police officers in connection with the January 29 arrest, but we see no such explanation in connection with the arrest at issue.

Morgan next argues the district court confused the cars in his January 29 and March 4 arrests, but we see no evidence of this. Morgan takes issue with the court's statement "[t]here was the suggestion that the compartments of the car had been opened up to store drug trafficking materials." But a look at the surrounding discussion demonstrates "the car" referred to the one in which Morgan was pulled over on January 29. The court had finished discussing the circumstances of the March 4 arrest and had turned to Morgan's criminal history, beginning with his most recent arrest. It then segued directly to his more distant criminal history, including prior drug-trafficking convictions. Thus, a fair reading of the transcript shows the reference to the tampered car was part of a discussion of Morgan's criminal history, and the court did not mistake the car from the January 29 arrest for the car in the March 4 arrest.

Morgan also argues the district court erred by stating he was arrested "maybe a week before" the arrest in this case when it actually occurred "six weeks prior to the March traffic stop." The court did misstate this fact during the hearing; the arrests were on January 29 and March 4, and the court did not specifically correct this in the statement of reasons. But Morgan falls short of demonstrating reliance. Neither the statement of reasons nor the hearing transcript show the district court relying on the time that passed between the two arrests. Instead, it cited the indicia of drug trafficking on January 29 to support an inference of repeat behavior on March 4. The "maybe a week" mention was a 'passing comment' on an immaterial detail," not a factual finding on which the court relied. *Pennington*, 908 F.3d at 240. And nothing prevented the district court from using these prior crimes as evidence Morgan was engaged in drug dealing again on March 4, 2017. The rules of evidence do not apply at sentencing, and the district court can rely on any relevant information, as long as it is reliable. *See* U.S.S.G. § 6A1.3; *United States v. Rollins*, 544 F.3d 820, 838 (7th Cir. 2008).

The district court found by a preponderance of the evidence that the firearm in Morgan's car was connected to drug trafficking, and it did not rely on factual errors to reach that conclusion, so the judgment is AFFIRMED.