**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 11, 2020[*]
Decided May 11, 2020

**Before**

DIANE P. WOOD, *Chief Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-3136

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for Central District of Illinois. |
| *v.* | No. 12-20026-001 |
| LEONARD SHARP, *Defendant-Appellant*. | James E. Shadid, *Judge*. |

**O R D E R**

Leonard Sharp appeals his sentence following the revocation of his supervised release. Because the district court relied on inaccurate information (Sharp's then-existing term of supervision was half as long as the judge thought), we vacate and remand for resentencing.

---

[*] We granted the parties' joint motion to vacate oral argument, so we are deciding this case on the briefs and record. *See* FED. R. APP. P. 34(a), (f).

**I**

Sharp pleaded guilty to distributing crack cocaine, 21 U.S.C. § 841(a)(1), and unlawfully possessing a firearm, 18 U.S.C. § 922(g)(1), in 2012. At sentencing, the district court determined that Sharp qualified as a career offender and calculated an advisory guidelines range of 188 to 235 months in prison. The court then decided that the career-offender provision overstated Sharp's criminal history, and it disagreed with the guidelines' crack-to-powder cocaine disparity. So it imposed a below-guidelines term of 46 months in prison followed by six years' supervised release. Sharp served his prison term and was released on supervision in March 2017.

About 18 months later, the district court reduced Sharp's term of supervised release from six to three years. Sharp had requested early termination of his supervision and had submitted to the court an email that his probation officer in the Northern District of Illinois (where he was supervised) had sent to his attorney in November 2018. In it, the probation officer wrote that "[d]uring the course of [Sharp's] supervision, there have been no violations … and Mr. Sharp has done everything (up to this point) that has been asked of him by probation and the court." The officer also noted that Sharp frequently travels for work and that he "does provide verification of travel details when asked and provides verification of employment when instructed/asked as well." In granting Sharp's motion in part, the district court noted that he had "done well the first two years" of supervision and had complied with the terms of his release.

About six months later, and with eight months remaining on Sharp's three-year term, the probation office in the Central District of Illinois (where Sharp was sentenced) petitioned to revoke his release. The petition and violation memorandum alleged that Sharp had sexually assaulted two minors and failed to notify his probation officer of a change in residence. The memo also included details that contradicted the earlier, favorable report from Sharp's supervising officer, noting that Sharp had not verified his travel details or income to the probation office and had failed to inform his probation officer of two instances of police contact. Sharp did not object to these assertions.

The court revoked Sharp's release after Sharp admitted the change-of-address violation. In exchange for Sharp's admission, the government agreed to withdraw the allegations based on the assault charges. The court explained that the change-of-address violation was a Grade C violation under U.S.S.G. § 7B1.1(a)(3), and that, coupled with Sharp's original criminal history category of IV, he faced a policy-statement range of 8 to 14 months in prison. *See id.* § 7B1.4(a). The probation office issued an amended memo

that reflected these developments and included the same assertions regarding the additional violations of Sharp's supervision. Again, Sharp did not object.

The sentencing hearing came next. The government urged a sentence at the high end of the policy-statement range. It pointed to the other uncharged violations described in the probation office's memoranda as evidence that Sharp could not comply with his release conditions. In arguing for a downward variance to as little as time served, defense counsel asserted that the uncharged violations were not relevant and reminded the court that Sharp's supervising officer from the Northern District did not oppose early termination. Counsel also noted that the potential sentencing range went "way down" once the alleged assault violations were dismissed, so the court should focus on "what he pled guilty to." The district court interjected that Sharp "gets a huge break today no matter what his sentence is the way that I'm going to explain it."

The court then sentenced Sharp to 12 months in prison with 18 months of supervised release to follow. It explained the new sentence by telling Sharp that it was giving him a "benefit" by shortening his current "six years" of supervision:

> [Y]ou actually benefit in some regard because you've got six years of supervised release. And now the most you could get, because I'm going to give you 12 months in [prison], is 18 months of supervised release. So you actually got a reduced term of supervised release by violating. So I believe that's an appropriate sentence under the circumstances.

Sharp did not object to the court's statement that he was serving "six years" of supervised release or otherwise clarify that his then-existing term was only three years.

Before announcing the sentence, the court discussed other factors relevant to its decision. The court emphasized Sharp's attitude in his allocution and the "significant, significant break" that he received at his original sentencing, adding that "somebody who got that significant of a break" should do everything required of him on supervision. The court also mentioned the probation office's assertions that Sharp had violated his release conditions at other times, including traveling without permission and failing to report police contact. Sharp's counsel objected to the court's reference to these uncharged violations, arguing that Sharp denied them and asking for a continuance to seek testimony from Sharp's supervising officer. The government opposed the request, noting that the facts in the violation memoranda "have gone unchallenged up until right before [the court] is about ready to impose [a] sentence."

The court denied the request for a continuance. It said that "[i]n spite of what's in the Violation Report, and it may seem that this is harsh for a simple violation of … not notifying probation of [a change in address,] … I believe that a guideline range sentence is appropriate here after considering all of the factors."

## II

On appeal, Sharp argues that he is entitled to resentencing because the district court relied on inaccurate information when imposing his sentence. He contends that the court erroneously believed that he was serving a six-year term of supervision at the time of the revocation hearing and that he had violated his release conditions on several other occasions. To prevail on this challenge, Sharp "must show both that information before the sentencing court was inaccurate and that the sentencing court relied on the inaccurate information in the sentencing." *United States v. Oliver*, 873 F.3d 601, 608–09 (7th Cir. 2017) (quoting *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003)).

We review the first argument (regarding the court's misapprehension of the length of Sharp's then-existing term of supervision) for plain error because Sharp did not raise it in the district court. *See United States v. Miller*, 900 F.3d 509, 512–13 (7th Cir. 2018). Sharp argues for de novo review because the challenged comment came during the announcement of his sentence, and Federal Rule of Criminal Procedure 51(a) states that "[e]xceptions to rulings or orders of the court are unnecessary" to preserve a claimed error. But we have distinguished between Rule 51(a), which "do[es] not require a litigant to complain about a judicial choice after it has been made," and Rule 51(b), which "requires a protest immediately after the ruling if the litigant did not have an opportunity to argue the point earlier." *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009). The latter applies here. As we have explained, "[w]hen the judge surprises counsel, it is far better to air and resolve the matter in the district court than to bypass available opportunities for correction and save the issue for appeal." *Id.*; *see also Miller*, 900 F.3d at 512 (ruling that, by failing to object, defendant forfeited challenge to erroneous factual statement made during pronouncement of sentence); *Oliver*, 873 F.3d at 607 (same). Therefore, Sharp could and should have objected.

Applying plain-error review, we will reverse only if we conclude that (1) an error occurred, (2) the error is clear or obvious and not reasonably disputable, (3) the error affected Sharp's substantial rights, so that it is reasonably probable that, but for this error, his sentence would have been different, and (4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *See United States v.*

*Spivey*, 926 F.3d 382, 385–86 (7th Cir. 2019); *Miller*, 900 F.3d at 512–13. The first two requirements are met: The government does not dispute that the district court stated that the length of Sharp's then-existing term of supervision was six years when, in fact, the court previously had reduced it to three years.

We also see a "substantial chance" that the district court's factual error affected sentencing and, therefore, Sharp's substantial rights. *United States v. Corona-Gonzalez*, 628 F.3d 336, 341 (7th Cir. 2010). The government argues that the court's reference to Sharp's "six year" term was merely "an afterthought—an attempt to diminish the psychological impact of the revocation sentence" and therefore had no effect on it. We disagree. The court stated that Sharp was getting a "huge break today" and then told him: "you actually benefit … because you've got six years of supervised release" but now, "the most you could get" is 18 months,[1] "[s]o you actually got a reduced term of supervised release by violating." This would be true if Sharp had been serving a six-year term of supervised release, in which case he would have had about three and a half years of supervision left at the time the petition to revoke was filed. In reality, however, Sharp had less than eight months remaining on his three-year term. Thus, he got an *increased* term of supervised release by violating, not a reduced one. That's hardly the "huge break" or "benefit" the district court thought it was giving Sharp.

Finally, because the record shows that "inaccurate information mattered in the sentencing decision," *United States v. Pennington*, 908 F.3d 234, 240 (7th Cir. 2018)—and because Sharp is entitled to be sentenced based on accurate information, *see id.* at 239— allowing his sentence to stand without reassessment would affect the fairness, integrity, or public reputation of the proceedings, *see Corona-Gonzalez*, 628 F.3d at 342. Therefore, a remand is required.

---

[1] The district court's math is slightly off. For Sharp's particular offense, the statute authorizes a maximum term of three years' supervised release. *See* 18 U.S.C. § 3583(b)(2). And "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment," the length of any additional term of supervision to follow "shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, *less* any term of imprisonment that was imposed upon revocation of supervised release." *Id.* § 3583(h) (emphasis added). So, technically, the district court could have imposed up to 24 months additional supervised release.

Sharp's second claimed error—that the district court based its sentence on its erroneous belief that he previously had violated other release conditions—does not independently warrant relief. Although Sharp did not object to the probation office's reports asserting these violations, he objected when the court mentioned them at the hearing, and the government does not argue that Sharp forfeited the objection. Therefore, we may treat this issue as preserved and review it de novo. *See Pennington*, 908 F.3d at 238. Yet, even if we assume that the additional violations alleged in the probation office's reports were inaccurate, Sharp has not shown that the district court "relied upon" that information when fashioning his sentence. *Id.* at 239. When his attorney objected to the court's consideration of the uncharged violations, the court responded that "[i]n spite of what's in the Violation Report … a guideline range is appropriate here after considering all of the factors." These other factors include the "significant break" that Sharp got at his original sentencing, his attitude in allocution, and the court's (incorrect) belief that Sharp was getting a reduced term of supervision by violating. The court's "in spite of" comment tells us that it was *not* considering the uncharged allegations when imposing the sentence. We take the court at its word.

We thus VACATE the judgment and REMAND for a new sentencing hearing. Sharp is scheduled for release on July 23, 2020, so a prompt hearing is desirable.