NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 8, 2020[*]
Decided July 20, 2020

**Before**

DIANE P. WOOD, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 19-3539

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 07-cr-94-bbc-1 |
| BRUCE J. RHODES, *Defendant-Appellant*. | Barbara B. Crabb, *Judge*. |

**O R D E R**

Bruce Rhodes, who was convicted of a federal child-pornography crime, appeals his resentencing after the district court revoked his supervised release. He contends that the district court based his new sentence on two inaccurate findings. In the first finding (made orally without objection and later corrected in writing), the court said that he violated his conditions of federal release while on state supervision, when the fact is that Rhodes committed his underlying pornography *crime* while on state supervision. In

---

[*] We granted the parties' joint motion to waive oral argument, and the appeal is therefore submitted on the briefs and the record. FED. R. APP. P. 34(a)(2)(C).

the second finding, the court concluded that Rhodes had not participated adequately in sex-offender treatment. Neither finding justifies another resentencing, and so we affirm.

**I**

After Rhodes pleaded guilty to possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4), he was sentenced in 2007 to 10 years in prison and a lifetime of supervised release. *United States v. Rhodes*, 552 F.3d 624, 625 (7th Cir. 2009). Rhodes committed this crime while on state supervision for sexually assaulting a girl. *Id.* at 625.

According to the probation office, Rhodes began to violate the conditions of his federal supervised release soon after it began in April 2019. He was caught using his cell phone, which was monitored by the probation office as a condition of his release, to search the Internet for images of nude girls. Rhodes conceded that he should not access the Internet until he has "progressed in sex offender treatment." Just two months later, however, a probation officer found three unauthorized cell phones in Rhodes's home during a scheduled search. At first, Rhodes denied ever turning them on. He then reversed himself and admitted to turning them on but denied using them to access the Internet. Finally, he shifted again, admitting to using the phones to view images on the Internet of topless girls.

The probation office petitioned to revoke Rhodes's supervised release. After describing Rhodes's inappropriate Internet use, the petition detailed his minimal participation in sex-offender treatment for many years after his state sexual-assault conviction in 2001. Rhodes had nominally enrolled in treatment while first on state probation, but he "demonstrated no desire to participate ... and 'implied in treatment that he should be allowed to engage in the pursuit of his own pleasure/needs.'" During his federal incarceration, Rhodes enrolled in sex-offender treatment, but he was removed from the program "due to his lack of effort and providing excuses for his failure to complete treatment tasks." Later, prison staff confiscated from Rhodes images of, and sexually explicit writings about, minors, so they recommended that he again participate in a sex-offender treatment program, but Rhodes declined. Finally, the petition observed that, although Rhodes attended sex-offender treatment sessions weekly while on supervised release, he also "continuously [sought] images of minors to support his deviant sexual interest." Rhodes's sex-offender treatment provider concluded that Rhodes was in "a moderate-high risk category for sexual re-offending."

Rhodes stipulated that he had violated three conditions of his release: he did not notify his probation officer about his unauthorized cell phones, he lied to his probation

officer, and he failed to pay a special assessment of $100. At a hearing, the government's lawyer added, "I don't think there's any dispute as to the facts" stated in the petition, which included Rhodes's refusal for years to take sex-offender treatment seriously. When the court asked Rhodes's attorney if he agreed, he replied, "That's correct."

The court revoked Rhodes's supervised release, and sentencing came next. Because Rhodes committed a Grade C violation and his underlying conviction was a Class C felony, the statutory maximum penalty was two years in prison. The Sentencing Guidelines recommended six to twelve months' reimprisonment because Rhodes's criminal history category was IV. The government urged the court to sentence Rhodes at the top of the guideline range. Doing so, it argued, would punish Rhodes, protect the public, and reflect that he had violated the conditions of his earlier state supervision multiple times and was disinterested in sex-offender treatment. Rhodes asked the court not to revoke his release because he had "made a lot of progress": he had found a good job and housing and was "fully engaging" in sex-offender treatment, despite still being "drawn to ... underage images."

The court imposed a twelve-month sentence of reimprisonment, to be followed by, again, a lifetime term of supervised release. In its explanation, the court made its two challenged findings:

> In light of the offense of conviction, his violations are serious. They occurred while you were on state community supervision for a hands-on sex offense involving a minor and while you were prohibited from using internet-capable devices. Your criminal history includes oral intercourse on and vaginal penetration of a 13-year-old female. These repeated and purposeful acts are intended to hide – were intended to hide his pursuit of child pornography and to bypass his computer monitoring are part of what I am considering today and what your probation officer believes is your unwillingness to participate or fully engage in sex offender treatment; also your level of untruthfulness with both your treatment provider and the supervising probation officer.

Rhodes did not object.

The court then issued a written order, which varied from its oral explanation. First, the court corrected its misstatement that Rhodes violated his conditions of federal release during state supervision. It wrote that his recent "violations are serious in light of his offense of conviction, which occurred while he was on state community

supervision for a hands-on sex offense involving a minor and while defendant was prohibited from using Internet-capable devices." Second, it omitted its reference to what Rhodes's probation officer "believe[d]," but it still found Rhodes "unwilling[ ] to participate in or fully engage in sex offender treatment."

## II

On appeal, Rhodes argues that the district court procedurally erred by sentencing him based on two erroneous facts. A defendant has a due process right to be sentenced based on accurate and reliable information, and so if a court relies on erroneous facts, it commits a "significant procedural error." *United States v. Oliver*, 873 F.3d 601, 608 (7th Cir. 2017) (quoting *United States v. Corona-Gonzales*, 628 F.3d 336, 340 (7th Cir. 2010)). To prove that the district court committed such an error, Rhodes "must show both that information before the sentencing court was inaccurate and that the sentencing court relied on the inaccurate information in the sentencing." See *id.* at 608–09 (quoting *Lechner v. Frank*, 341 F.3d 635, 639 (7th Cir. 2003)).

First, Rhodes challenges the district court's oral statement that he violated his conditions of federal supervised release while he was on state probation. Rhodes concedes that he did not object to this statement. But, he continues, his silence is not a waiver because the government does not suggest "any strategic justification" for his silence, so this court should "presume an inadvertent forfeiture rather than an intentional relinquishment" and review for plain error. See *United States v. Moody*, 915 F.3d 425, 429 (7th Cir. 2019). We will reverse for plain error if the district court made an error that is not subject to reasonable dispute, that affected Rhodes's substantial rights, and that unacceptably diminished the fairness, integrity, or reputation of the judicial proceedings. See *id.*

Reversible plain error did not occur. We will assume that the district court clearly erred by stating that Rhodes violated the conditions of his federal release during his term of state supervision. The violations occurred in 2019 and Rhodes's state supervision ended by 2007. But the error did not affect Rhodes's substantial rights, as he was not prejudiced by it—*i.e.* he cannot show a "reasonable probability that, but for this error, his sentence would have been different." See *United States v. Miller*, 900 F.3d 509, 512 (7th Cir. 2018). The petition to revoke accurately stated that Rhodes committed a child-pornography crime (not a violation of a condition of federal release) while on state supervision in 2007. The government made the same point at the revocation hearing. And the court later corrected itself, writing that Rhodes's "offense of conviction" occurred while on state supervision. Because the court had accurate information before

it, and corrected itself while maintaining the same sentence, "the difference between the accurate and inaccurate information did not actually affect the sentence." *United States v. Pennington*, 908 F.3d 234, 240 (7th Cir. 2018).

Rhodes responds that the written order may not be considered because what the court said at the hearing "takes precedence." See *United States v. Cephus*, 684 F.3d 703, 709–10 (7th Cir. 2012). But "that is the rule for a pronouncement of a sentence itself." *Pennington*, 908 F.3d at 240. We do "not appl[y] the same strict rule to a judge's *explanation* of a sentence. In fact, we have held the opposite." *Id.* (citing *United States v. Pankow*, 884 F.3d 785, 791 (7th Cir. 2018)).

Rhodes also challenges the district court's finding that he was unwilling to participate or fully engage in sex-offender treatment. Rhodes points out that he regularly attended individual sex-offender treatment while on federal supervised release and accuses the district court of confusing his earlier refusal to participate with his recent compliance. The parties agree that Rhodes preserved an objection to this finding, because he argued to the district court that, while on federal release, he was fully participating in sex-offender treatment. We thus review for clear error. See *Oliver*, 873 F.3d at 607.

This finding was not clearly erroneous. Even though Rhodes attended sex-offender treatment while on federal supervised release, the district court did not say that it was considering only Rhodes's behavior while on federal release. And the statutes governing Rhodes's resentencing did not require the district court to ignore Rhodes's many years of failing to cooperate with treatment before his most recent release. See 18 U.SC. §§ 3553(a), 3583(e). Rhodes replies that he never stipulated to his previous history of refusing treatment. But he did. When the government said that there was no dispute about the facts in its original petition, which included Rhodes's earlier history of resistance to treatment, Rhodes agreed. Even if Rhodes's counsel was confused, he lodged no objections to the facts in the petition, and he offers no reason to question their veracity now. The district court's reliance on those facts was therefore permissible. See *United States v. Walton*, 907 F.3d 548, 553 (7th Cir. 2018).

Because Rhodes's sentence was not based on inaccurate information, we AFFIRM.