COURT OF APPEALS
DECISION
DATED AND FILED

January 24, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1544-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2020CF2836

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

BERNARD M. JACKSON,

DEFENDANT-APPELLANT.

APPEAL from a judgment and orders of the circuit court for Milwaukee County: MICHELLE ACKERMAN HAVAS, Judge. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Bernard M. Jackson appeals from a judgment of conviction, entered upon his guilty plea, convicting him of third-degree sexual assault.  Jackson also appeals an order denying his postconviction motion for relief and an order denying his motion to reconsider.  Jackson contends that the circuit court sentenced him based on inaccurate information, and the circuit court failed to consider the relevant sentencing factors.  For the reasons discussed below, we reject Jackson's arguments, and therefore affirm.

## BACKGROUND

¶2     According to the criminal complaint, D.M.B. stated that on August 16, 2020, she woke up to Jackson, her friend's boyfriend, on top of her.  Jackson pulled her pants and underwear down.  She tried to push Jackson off of her, but he penetrated her vagina with his penis.  Subsequently, she was able to push Jackson off her and she ran out of the residence.

¶3     Jackson told police that he saw D.M.B. lying in the middle of the couch asleep.  He approached her, rolled her onto her back, and pulled her pants down.  He then opened her legs and put his penis into her vagina.  Jackson stated that he "did three or four humps," meaning that his penis penetrated D.M.B.'s vagina three or four times.  He stated that while penetrating D.M.B.'s vagina, she woke up and said, "Ok, stop."  When asked why he thought that D.M.B. asked him to stop, Jackson replied, "she did not want to have sex with me."

¶4     Jackson was charged with one count of second-degree sexual assault.  Subsequently, pursuant to a plea agreement, Jackson entered a plea to an amended charge of third-degree sexual assault.  One count of false imprisonment was dismissed and read-in.

¶5      At sentencing, the State recommended the maximum prison sentence of five years of initial confinement and five years of extended supervision. The defense requested an imposed, but stayed, prison sentence and that Jackson be placed on probation with "substantial jail time." In support of the recommendation, the defense submitted a sentencing memorandum and multiple character letters written on Jackson's behalf. The circuit court sentenced Jackson to four years of initial confinement and four years of extended supervision.

¶6      Jackson filed a postconviction motion alleging that he was sentenced based on inaccurate information. Jackson also contended that the circuit court did not sufficiently explain its sentence or why it rejected probation. The circuit court denied the motion. Subsequently, Jackson filed a motion for reconsideration, which the circuit court again denied. This appeal follows. Additional relevant facts are discussed below.

## DISCUSSION

¶7      On appeal, Jackson contends that the circuit court sentenced him based on inaccurate information, and the circuit court failed to consider the relevant sentencing factors. We address each issue below.

### I.      Inaccurate Information Claim

¶8      "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." *State v. Tiepelman*, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether a defendant was denied that right is a constitutional issue that is reviewed *de novo*. *Id.*

¶9      To prevail on an inaccurate information claim, a defendant must make two showings. First, the defendant must show that the information was

inaccurate. ***State v. Travis***, 2013 WI 38, ¶21, 347 Wis. 2d 142, 832 N.W.2d 491. Second, the defendant must show by clear and convincing evidence that the court actually relied upon the inaccurate information at sentencing. ***Id.***, ¶¶21-22. If the defendant makes these two showings, the burden shifts to the State to show beyond a reasonable doubt that the error was harmless. ***Id.***, ¶23.

¶10 According to Jackson, there were four inaccuracies during the sentencing hearing. Jackson first contends that the circuit court "unreasonably reacted" to Jackson's use of the word "mistake" in his allocution.

¶11 During his allocution, Jackson apologized to D.M.B. and stated that "it was a mistake on me. I'm taking full responsibility." Jackson indicated that "I looked into something that wasn't there, and I responded to it, and that was a mistake." Jackson then stated that "I'm not going to blame or say she was flirting with me, she was looking at me wrong, but I seen something that I thought was there, and I—I went for it, but it wasn't so."

¶12 In its sentencing decision, the circuit court questioned how the incident could be described as a "mistake." The court noted that Jackson said he was taking responsibility, but the court indicated that it could not "get over the word 'mistake'" given that Jackson had removed D.M.B.'s pants and sexually assaulted her while she was asleep.

¶13 Jackson complains that the circuit court transformed his statement that he was not placing blame on D.M.B. into him attempting to shift responsibility for his conduct to D.M.B. According to Jackson, the plain language of his statement was inconsistent with the circuit court's "inaccurate interpretation."

¶14    We disagree.  To start, we are not convinced that the circuit court's comments constitute a factual finding.  Rather, we agree with the State that the circuit court's comments were simply a disagreement with how Jackson characterized his own conduct.  *See United States v. Pennington*, 908 F.3d 234, 239-40 (7th Cir. 2018) (stating in an inaccurate information challenge that a judge's passing comment that the defendant was a poor historian of her past was difficult to construe as a factual finding).

¶15    Moreover, even if the comments constituted a factual finding, we cannot say that the finding was clearly erroneous.  *See* WIS. STAT. § 805.17(2) (2019-20) (stating that we uphold findings of fact unless they are clearly erroneous).[1]  The circuit court is responsible for assessing the credibility of a witness and the weight of his or her testimony.  *See State v. Peppertree Resort Villas, Inc.*, 2002 WI App 207, ¶19, 257 Wis. 2d 421, 651 N.W.2d 345.  We defer to a circuit court's assessment of witnesses because the circuit court is in the best position to observe the witnesses and to gauge the persuasiveness of their testimony.  *Johnson v. Merta*, 95 Wis. 2d 141, 151-52, 289 N.W.2d 813 (1980).  Here, the circuit court reasonably determined that Jackson's use of the word "mistake" shifted some of the blame to D.M.B.  The circuit court's credibility finding is not "inaccurate information" simply because Jackson disagrees with the circuit court's characterization of him.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

5

¶16 Second, Jackson contends that the circuit court misinterpreted the character letters submitted on his behalf "to reflect that the people who wrote them did not even know how old Jackson is[.]"

¶17 In regards to the character letters, the circuit court stated at sentencing that based on the way the letters were phrased, the circuit court had forgotten that Jackson was not twenty years old, but in fact, thirty-nine years old. The court further stated that in "reading these letters, it sounds to me that everybody believes that you are, you know, just very young. I was surprised to see how old you were." Once again, we are not persuaded that these comments are factual findings that could be inaccurate. *See Pennington*, 908 F.3d at 239-40. Rather, they appear to be simply an expression of surprise.

¶18 Additionally, even if the comments constitute a factual finding, Jackson has failed to establish that the circuit court's comments are inaccurate. Inaccurate information is that which is "extensively and materially false." *Tiepelman*, 291 Wis. 2d 179, ¶10 (quoting *Townsend v. Burke*, 334 U.S. 736, 741 (1948)). None of the letters mention Jackson's age, and the circuit court correctly indicated that Jackson was actually thirty-nine years old.

¶19 Further, as the State observes, it is not unreasonable for the circuit court to be surprised by Jackson's actual age. A letter from Jackson's father referenced that Northwestern University had shown an interest in Jackson's athletic and academic abilities, and that math was his best subject throughout school. A letter from Jackson's mother states "Bernard is my oldest son and has played a major role in helping me raise his siblings," which suggests that Jackson is younger than his late thirties. Thus, we reject Jackson's claim that the circuit court's comments regarding the character letters constitute inaccurate information.

¶20 Third, Jackson challenges the circuit court's statement that the victim may now think that "I should never go to sleep because if I let my guard down enough to relax and go to sleep, I might get sexually assaulted." Jackson, however, presents no evidence that this statement is false or inaccurate. *Cf. Travis*, 347 Wis. 2d 142, ¶26 (concluding that there was inaccurate information where the circuit court mistakenly believed a mandatory minimum applied to the offense); *Tiepelman*, 291 Wis. 2d 179, ¶¶6, 29-30 (concluding that there was inaccurate information where the number of prior convictions was wrong).

¶21 Moreover, the underlying fact—that D.M.B. suffered trauma from the sexual assault—is supported in the record. At sentencing, the prosecutor discussed the "emotional scars" that Jackson left on D.M.B. and that those scars were "not going to go away at this point." Jackson's counsel also acknowledged that "we can't dismiss the fact that [D.M.B.] will probably live with some trauma for the rest of her life and maybe even need counseling for what's happened here[.]" Jackson also acknowledged the effect his actions had on D.M.B. During his allocution, Jackson stated, "[a]nd for her to go through that, I don't—I don't know the feeling. I don't know. I don't understand it, but I can understand that she is traumatized and she is hurt[.]"[2] *Cf. State v. Johnson*, 158 Wis. 2d 458, 468-69, 463 N.W.2d 352 (Ct. App. 1990), *abrogated on other grounds by State v. Harbor*, 2011 WI 28, ¶¶47-48, 333 Wis. 2d 53, 797 N.W.2d 828 (holding that the defendant failed to establish inaccurate information where the record supported the circuit court's statements that the victims suffered emotional damage).

---

[2] Although not available to the circuit court at the time of sentencing, we note that the record reflects that there is a police report that states that D.M.B. "advised me that she has never gone through something like this before. She added that she is traumatized about this."

¶22    Finally, Jackson contends that the circuit court accused him of challenging D.M.B. to call the police; however, the police report of the incident shows that it was Jackson's girlfriend who told D.M.B. to call the police if the sexual assault really happened.  Additionally, Jackson complains that when the circuit court was confronted after his conviction with the police report, the circuit court speculated that Jackson's girlfriend had acted at Jackson's direction.

¶23    Even if we assume that the circuit court's statement was inaccurate, we conclude that Jackson has failed to establish that the circuit court actually relied on this information.  The circuit court's statement was that:

> *As to the number on the sentence, I am taking into account the fact that you did plead guilty to this.  And despite your initial denial, almost challenging [D.M.B.] to call the police, which I find to be a manipulation,* I do believe you eventually did admit to the police that you did engage in the behavior and that you did understand that when she told you to stop, you stopped because you understood that she did not want to have sex with you.

(Emphasis added).  The circuit court's statement reflects that the court imposed Jackson's sentence despite the perceived manipulation, not because of it.  *See Travis*, 347 Wis. 2d 142, ¶22.

¶24    Therefore, we reject Jackson's arguments that the circuit court violated his due process right to be sentenced only on accurate information.[3]

---

[3] We note that the State also argues that any error is harmless.  Given our conclusion that Jackson was not sentenced based on inaccurate information, we do not address the State's harmless error argument.  *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).

## II. Erroneous Exercise of Discretion Claim

¶25    Jackson also contends that the circuit court failed to adequately consider the relevant sentencing factors.  According to Jackson, the circuit court did not consider "the need to protect the community" or Jackson's "rehabilitative needs."  Additionally, Jackson argues that there is no explanation as to why four years of initial confinement and four years of extended supervision was the minimum amount of confinement necessary.

¶26    The State responds that Jackson forfeited these arguments.  We agree.  In his postconviction motion, Jackson stated in a single sentence that "the [circuit] court arguably did not sufficiently explain the basis for the sentence or why it concluded that probation would unduly depreciate the seriousness of the offense."  Jackson's postconviction motion did not allege that the circuit court failed to consider the need to protect the community or his rehabilitation needs.  Additionally, Jackson did not develop an argument in his postconviction motion as to *why* the circuit court failed to adequately explain itself.

¶27    We generally do not consider issues raised for the first time on appeal. *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727 (stating that "[i]t is a fundamental principle of appellate review that issues must be preserved at the circuit court").  While there is an exception to this rule when there is a sufficiency of the evidence claim or an issue that was previously raised during

trial, *see* WIS. STAT. § 974.02, Jackson's erroneous exercise of discretion claim does not fall within these exceptions, and therefore, we decline to address it here.[4]

## CONCLUSION

¶28    In sum, for the reasons stated above, we reject Jackson's arguments that he is entitled to a new sentencing hearing.  Accordingly, we affirm.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] In his reply brief, Jackson contends that the circuit court opened the door to this issue because it stated in its postconviction decision that it had appropriately considered the relevant sentencing factors.  Jackson, however, does not cite any authority for this proposition.  We do not address undeveloped arguments. *State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).